UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
MASSAMONT INSURANCE           )
AGENCY, INC.                  )
                              )
        Plaintiff,            )
                              )   CIVIL ACTION NO. 05-11897-WGY
v.                            )
                              )
UTICA MUTUAL INSURANCE        )
COMPANY                       )
                              )
        Defendant.            )
_____)

**UTICA MUTUAL INSURANCE COMPANY'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Utica Mutual Insurance Company ("Utica") respectfully submits this memorandum of law in support of its motion for summary judgment on all of the claims made by the plaintiff, Massamont Insurance Agency, Inc. ("Massamont").

**I.  INTRODUCTION**

As a result of Massamont's business decision to breach its agency agreement with Westchester Fire Insurance Company ("Westchester") by transferring substantially all of the program business to a competing carrier, Massamont was found liable to Westchester for damages in the amount of $2.6 million. At the time Westchester made its demand for arbitration, Massamont sought coverage for Westchester's claims under an errors and omission policy issued by Utica. Because the policy provided coverage only for negligent acts, errors, and omissions, Utica declined coverage. In this action, Massamont claims that Utica breached its duties to defend and indemnify Massamont, and that Utica's disclaimer of coverage constituted a violation of Chapters 93A and 176D.

Utica is entitled to entry of summary judgment on all of Massamont's claims. Westchester's arbitration demand alleged that Massamont was liable for breaching the agency agreement because Massamont transferred program business to another carrier. Westchester did <u>not</u> allege that Massamont was liable to Westchester for negligently carrying out its duties under that agreement. Utica's policy provides coverage only for negligent acts, errors, or omissions. Therefore, Utica had no duty to defend Massamont in the action brought by Westchester. Because the duty to defend is broader than the duty to indemnify and Utica had no duty to defend, it logically had no duty to indemnify Massamont. Further, the evidentiary record in the arbitration proceedings demonstrates as a matter of law that no basis for indemnity exists. Finally, because Utica did not breach any duties to Massamont, Utica cannot be found liable for a violation of Chapters 93A and 176D. Accordingly, as discussed more fully below, Utica is entitled to summary judgment on all of Massamont's claims.

## II. <u>STATEMENT OF FACTS</u>

Massamont is a licensed insurance agency that specializes in the placement and administration of insurance programs for specific markets in New England. (Local Rule 56.1 Statement of Undisputed Facts ("Statement of Undisputed Facts"), ¶ 1). In 2003, Massamont was insured under a Utica claims-made Insurance Agents and Brokers Errors and Omissions Liability Policy No. 3445032 EO (the "Policy"). (<u>Id</u>. at ¶ 3). The Policy carried liability limits of $10 million "each loss" and $11 million "each aggregate," and was effective from July 30, 2003 to July 30, 2004. (<u>Id</u>.) The Policy provided coverage for claims arising out of "wrongful acts" committed in the conduct of the insured's business, in rendering or failing to render professional

services. (Id. at ¶ 5). The Policy defined "wrongful acts" as "any negligent act, error, or omission to which this insurance applies." (Id. at ¶ 6). The Policy specifically excluded coverage for "any dishonest, fraudulent, malicious, or criminal conduct committed or alleged to have been committed by or at the direction of the insured," and for claims arising out of or alleging the "unauthorized use of trade secrets or confidential or proprietary information." (Id. at ¶ 7).

Effective January 1, 2001, Massamont entered into an Agency Agreement (the "Agreement") with Westchester. (Id. at ¶ 8). Pursuant to the Agreement, certain schools and municipalities, as part of the Metrogard and Diplomax Programs (the "Programs"), were to purchase insurance policies issued exclusively by Westchester through Massamont. (Id. at ¶ 9). The Agreement was to remain in effect until December 31, 2003, unless previously terminated in accordance with other provisions of the Agreement. (Id.) The Agreement provided that Massamont would not solicit business under the Programs for any other insurer without providing Westchester a right of first refusal. (Id. at ¶¶ 10-11).

On or before July 1, 2003, Massamont transferred certain program accounts to a competing insurance carrier of Westchester, Axis Capital Group ("Axis"). (Id. at ¶ 12). By letter dated July 9, 2003, Westchester terminated the Agreement due to Massamont's alleged violation of the Agreement in transferring certain program business to Axis. (Id. at ¶ 13). Massamont denied that it breached the Agreement. (Id.)

On or about October 23, 2003, Westchester served Massamont with a demand for arbitration ("Arbitration Demand"), seeking damages for Massamont's breach of the exclusivity provisions of the Agreement by: (1) seeking another company to write program business; (2)

3

soliciting program business for Axis without first offering the business to Westchester; and (3) transferring program business to Axis without giving Westchester ninety days' notice of the proposed transfer. (Id. at ¶ 14). Westchester also alleged that Massamont had breached the confidentiality provisions of the Agreement. (Id.)

On October 28, 2003, Massamont tendered the Arbitration Demand to Utica. (Id. at ¶ 15). On March 4, 2004, Utica sent a letter to Massamont disclaiming coverage for the claims made by Westchester. (Id. at ¶ 16). Utica explained, "Westchester's claims of Massamont's deliberate and secret breach of the agreement that existed between the parties is not a negligent act, error, or omission to which this insurance applies . . . ." (Id.) Utica also disclaimed coverage on the grounds that the Policy excluded coverage for dishonest, fraudulent, malicious, or criminal conduct. (Id.) Massamont did not respond to this disclaimer of coverage, and had no further communications with Utica during the discovery phase of the arbitration proceedings. (Id. at ¶ 17).

The arbitration between Massamont and Westchester (the "Arbitration") was held from November 16-19, 2004, and from December 13-14, 2004. (Id. at ¶ 18). On December 6, 2004, after four days of testimony, Massamont again wrote to Utica, challenging the coverage disclaimer and asserting that none of the policy provisions cited in Utica's March 4, 2004 letter supported the denial of coverage. (Id. at ¶ 19). Massamont did not address Utica's assertion that the Policy provided coverage only for "negligent acts, errors, or omissions." (Id.) By letter dated March 31, 2005, Utica responded to Massamont's December 6, 2004 letter, reiterating its disclaimer of coverage. (Id. at ¶ 20).

On April 26, 2005, the arbitration panel issued an order awarding damages to Westchester in the amount of Two Million Six Hundred Thousand ($2,600,000) Dollars. (Id. at ¶ 21). On May 5, 2005, Massamont made a demand on Utica for indemnification against the arbitration award. (Id. at ¶ 23). By letter dated May 19, 2005, Utica confirmed to Massamont its denial of coverage. (Id.)

By letter dated August 8, 2005, Massamont sent a "Demand for Relief Under M.G.L. Ch. 93A" to Utica. (Id. at ¶ 24). Utica responded to this demand by letter dated August 29, 2005, reasserting its denial of coverage. (Id.) On September 19, 2005, Massamont filed a complaint in this Court against Utica, seeking a declaratory judgment that Massamont was entitled to coverage and indemnification, and alleging breach of contract and bad faith conduct pursuant to Chapters 93/176D. (Id. at ¶ 25).

### III. ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact, and the movant is entitled to a judgment as a matter or law. Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990); McNeill v. Metropolitan Property and Liability Ins. Co., 420 Mass. 587, 589, 650 N.E.2d 793, 795 (1995). A declaratory judgment action is appropriate for summary judgment. McDermott v. Watertown Housing Authority, 25 Mass. App.Ct. 995, 996, 521 N.E.2d 1387, 1389 (1988). Generally, the construction of an insurance contract and the application of its terms is a matter of law to be decided by the court. Stop & Shop Co., Inc. v. Federal Ins. Co., 136 F.3d 71 (1st Cir. 1998); Somerset Savings Bank v. Chicago Title Ins. Co.,

420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995). Under Massachusetts law, an insurance policy is to be interpreted by the same general rules that govern the construction of any written contract, and therefore courts must construe the words of the policy in their usual and ordinary sense. Merchants Ins. Co. of New Hampshire, Inc. v. United States Fid. and Guar., 143 F.3d 5, 8 (1st Cir. 1998). The insured bears the burden of proving that the "loss" was within the description of the risks covered under a policy. Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140, 424 N.E.2d 464, 465 (1981).

> **B.    Utica is Entitled to Summary Judgment on Counts I & III of Massamont's Complaint (Duty to Defend) Because Westchester's Arbitration Demand Did Not Allege A Claim Within The Policy's Insuring Agreement.**

Utica had no duty to defend Massamont against Westchester's claims because Westchester's alleged losses, as stated in Westchester's Arbitration Demand, did not arise out of a negligent act, error, or omission. "The question of the initial duty of a liability insurer to defend [ ] actions against the insured is decided by matching the [ ] complaint with the policy provisions . . . ." Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146, 461 N.E.2d 209, 212 (1984). The scope of an insurer's duty to defend is based on the facts alleged in the complaint and those facts that are known or readily knowable by the insurer. Desrosiers v. Royal Insurance Company of America, 393 Mass. 37, 40, 468 N.E.2d 625, 628 (1984). In this inquiry, "when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394-95, 788 N.E.2d 522, 530 (2003) (quoting Timpson v. Transamerica Ins. Co., 41 Mass. App. Ct. 344, 347, 669 N.E.2d 1092, 1095 (1996)). Where the words of an

insurance contract are plain and free from ambiguity they must be construed in their usual and ordinary sense, according to the fair meaning of the words used. Jacobs v. United States Fidelity & Guar. Co., 417 Mass. 75, 76-77, 627 N.E.2d 463, 464 (1994).

Here, the question of whether Utica had a duty to defend Massamont can be determined by comparing the allegations contained within the four corners of Westchester's Arbitration Demand to the language of the Policy. Thus, this Court can decide whether there was a duty to defend as a matter of law.[1]

Westchester's Arbitration Demand sought damages for Massamont's breach of the agency agreement through its transfer of program business and its release of confidential information to Axis. Specifically, Westchester alleged:

> Westchester believes that Massamont provided confidential information about the Program Business to Axis, described new and renewal Program Business to Axis, and began discussing when and how it would transfer or place new and renewal Program Business to Axis with respect to policies incepting on July 1, 2003. All of the foregoing constituted a violation or breach of the exclusivity provision and certain other provisions of the Agreement.
>
> On or about June 27, again unbeknownst to Westchester, Massamont agreed to transfer or place a large portion of the Massachusetts and Rhode Island new and renewal Program Business with Axis in violation of the exclusivity provision and certain other provisions of the Agreement. The business transferred to Axis amounted to approximately $12 million dollars in underwriting premium. Had Westchester known, it would have objected.

(Statement of Undisputed Facts, ¶ 14). There is no allegation in the Arbitration Demand that Massamont's actions were negligent or inadvertent, or that Massamont breached the standard of care applicable to Massamont's performance of its insurance-related duties under the agreement.

---

[1] In this case, plaintiff has not alleged that there were facts pertinent to Utica's analysis of its defense obligations other than those alleged in the Arbitration Demand. Cf. Desrosiers, 393 Mass. at 407, 468 N.E.2d at 628 (in denying

(<u>Id</u>.)

In light of Westchester's allegations, Utica was under no duty to defend Massamont. The Policy provided in pertinent part as follows:

> <u>Section II(1)(a)</u>:
>
> We will pay on behalf of the insured all 'loss' to which this insurance applies.
>
> We will have the right and the duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false, or fraudulent. However, we will have no duty to defend an insured against any 'suit' seeking damages for a 'wrongful act' to which this insurance does not apply.
>
> <u>Section II(1)(e)</u>:
>
> The 'loss' must arise out of 'wrongful acts' committed in the conduct of the insured's business, wherever committed or alleged to have been committed, by the insured or any person for whose 'wrongful acts' the insured is legally liable in rendering or failing to render professional services as:
>
> (1)  A General Insurance Agent;
>
> (2)  An Insurance Broker;
>
> (3)  An Insurance Agent;
>
> (4)  An Insurance Consultant;
>
> (5)  A Managing, Master or Brokerage General Agent;
>
> (6)  A Life and Accident and Health Insurance Agent;
>
> (7)  A Surplus Lines Broker; or
>
> (8)  A Notary Public.

---

duty to defend, insurer was entitled to consider known facts that placed claim outside scope of policy, even though those

...

'Loss' means any amount which an insured becomes legally obligated to pay as damages for any 'claim' to which this insurance applies and shall include judgments and settlements. ...

'Claim' means a written notice, including service of 'suit' or demand for arbitration, received by one or more insureds asking for money or services.

'Suit' means a civil proceeding in which damages because of 'loss' from a 'wrongful act' are alleged.

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

...

'Wrongful act' means any negligent act, error, or omission to which this insurance applies.

Section III – Exclusions:

This insurance does not apply to:

1.    Any dishonest, fraudulent, malicious, or criminal conduct committed or alleged to have been committed by or at the direction of the insured. If a 'suit' is brought against the insured alleging both 'wrongful acts' within the coverage of the policy and dishonest, fraudulent, malicious, or criminal conduct, then we will defend the insured in the trial court, but we shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall we have any further obligation to defend after judgment in the trial court.

    This exclusion applies only to insureds who participated in, acted with knowledge of, or acquiesced to such conduct.

...

---

facts were not alleged in complaint).

> 19. "Claims" arising out of or alleging the unauthorized use of trade secrets or confidential or proprietary information.

(Statement of Undisputed Facts, ¶ 4).

Thus, the Policy obligates Utica to provide coverage for any "suit," which is defined to include arbitration proceedings, but only if the damages alleged arise out of a "loss" from a "wrongful act." (Id. at ¶¶ 4-6). The "loss" also must arise out of "wrongful acts" committed in the conduct of the insured's business, in rendering or failing to render professional services. (Id.) "Wrongful act" is defined as any "negligent, act, error, or omission." (Id. at ¶ 6). Because Westchester's Arbitration Demand sought to recover damages arising only out of Massamont's intentional breach of its contractual obligations, and not from any negligent, acts, errors, or omissions committed in rendering professional services, Utica had no duty to defend Massamont against Westchester's claims.

Case law supports Utica's position that there is no duty to defend an insured against breach of contract claims arising out of deliberate business decisions. For example, in <u>Town of Orland v. National Fire & Casualty Co.</u>, 726 N.E.2d 364 (Ind. App. 2000), an engineer had sued a municipality for breach of a contract for professional services, where the municipality had ordered the engineer to stop work and had hired another engineer to complete the first engineer's duties. The municipality brought a declaratory judgment action against its insurer, asserting that the insurer should have provided a defense to the town under its errors and omissions policy because the engineer's complaint arguably alleged mismanagement by the town. The court rejected this argument, holding:

> We acknowledge that "[a] duty of care, the breach of which will support a negligence action, may arise contractually." …. However, this is not such a case. Here, [the

10

> town's] conduct cannot be characterized as the negligent performance of a contractual duty such that [the plaintiff engineer] could have brought a negligence action rather than one for breach of contract. Instead, [the town], whether in good faith or not, deliberately made business decisions which caused [the plaintiff engineer] to question [the town's] commitment to the contract and, thus, bring the federal lawsuit. We hold that such conduct does not result in liability under the Errors or Omissions Clause issued by [the insurer] and decline [the town's] invitation to treat the Errors or Omissions Clause as a performance bond.

Id. at 370-71; see also Smartfoods, Inc. v. Northbrook Property and Cas. Co., 35 Mass. App. Ct. 239, 242-43, 618 N.E.2d 1365, 1367-68 (1993) (policy's definition of "accident" did not extend to insured's termination of distributorship agreements).

Similarly, in Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Ins. Co., 987 F.2d 415 (7th Cir. 1993), the court held that the insured's decision to stop making payments into an employee pension fund was not a "negligent act, error, or omission," even though the insured allegedly acted in good faith and in reliance on erroneous legal advice. The court held:

> Under [the insured's] logic, any default arising from a mistaken assumption regarding one's contractual liability could be transformed into an insured event. Indeed, refusing to pay a debt in reliance upon erroneous advice of counsel would convert a contractual debt into damage arising from a negligent omission. We dare not imagine the creative legal theories treading just short of malpractice and frivolity that could seek to transform contract obligations into insured events.

Id. at 420-21; see also Pacific Ins. Co. v. Eaton Vance Management, 369 F.3d 584, 593 (1st Cir. 2004) (noting that if an insured's mistaken belief regarding a contractual obligation was sufficient to trigger coverage, insureds would be more likely to adopt "aggressive" interpretations of contractual obligations); First Southern Insurance Company v. Jim Lynch Enterprises, Inc., 932 F.2d 717, 720 (8th Cir. 1991) (where duty violated by insured is contractual in nature, action lies in

11

contract, not tort, and insurer has no duty to defend); Cincinnati Ins. Co. v. Metropolitan Properties, Inc., 806 F.2d 1541, 1544-45 (11th Cir. 1986) (insured developer's failure to acquire low-income properties as required under contract with city was not a "negligent act, error, or omission," even if developer's breach resulted from carelessness rather than an intent to defraud, where duty breached was one created by contract, not by law).

Massamont's expected reliance on USM Corp. v. First State Insurance Co., 420 Mass. 865, 652 N.E.2d 613 (1995) ("USM") in support of its argument that Utica owed Massamont a duty to defend is misplaced. USM involved the interpretation of an errors and omissions policy in which the insured had been found liable in an underlying action for having breached an express warranty that a computer system would perform certain functions. Id. at 866, 652 N.E. 2d at 614. In fact, the computer system did not function in accordance with its specifications. Id. In the underlying action, the insured specifically was determined not to have been negligent because the insured reasonably had relied upon information from the computer manufacturer in making its representations and warranties to the insured's customer. Id.

Like the Utica policy, the First State policy at issue in USM provided coverage for claims against the insured by reason of any "negligent act, error, or omission." In parsing the language of the policy, the Court determined that the word "negligent" modified only the word "act," so that even though the court in the underlying action had determined that there was no negligence, there still could be coverage if the claim for which the insured was found liable involved either an "error" or "omission."[2] In the key language of the decision, the Court concluded (with emphasis

---

[2] While USM supports Utica's denial of coverage in this case, Utica notes that the Supreme Judicial Court's interpretation of the phrase "negligent act, error, or omission" is a minority view. A majority of courts have held that the

12

added) as follows.

> "Although the policy does not cover liability because of each and every error resulting from a breach of contract, the error in this case was inherent in the rendering of professional advice. [The consultant] assured [its customer] that it may rely on its professional advice as a consultant that a particular system would meet a particular standard of performance. [Consultant] was not negligent in giving that assurance, or, put another way, it was reasonable within its professional responsibilities for [consultant] to make such a promise."

Id. at 868-69, 652 N.E. 2d at 615.

In the present case, unlike in USM, Westchester did not allege that Massamont erred in rendering professional services or advice, or in carrying out its professional responsibilities under the agreement. To the contrary, Westchester alleged that Massamont deliberately acted to deprive Westchester of the benefits due to Westchester under the agreement. That breach had nothing to do with the rendering of professional services – as was the case in USM – but arose from and was related to Massamont's transfer to Axis of an extensive book of business that, by contract, Massamont had agreed to place with Westchester.

This case is much more like Smartfoods, supra, than USM. See 35 Mass. App. Ct. at 242-43, 618 N.E.2d at 1367-69. In Smartfoods, the Massachusetts Appeals Court held that the definition of "accident" in a general liability policy did not encompass the insured's decision to terminate its distributorship agreements. Id. The court stated, in pertinent part, as follows.

---

word "negligent" must modify all of the words that follow it. See Baylor Heating & Air Conditioning, Inc. v. Federated Mutual Insurance Co., 987 F.2d 415, 419-20 (7th Cir. 1993); First Southern Insurance Co. v. Jim Lynch Enterprises, 932 F.2d 717, 719 (8th Cir. 1991); United States Fidelity & Guaranty Co. v. Fireman's Fund Insurance Co., 896 F.2d 200, 203 (6th Cir. 1990); Cincinnati Insurance Co. v. Metropolitan Properties, Inc., 806 F.2d 1541, 1544 (11th Cir. 1986). In fact, the Tenth Circuit has suggested in an unreported decision that USM represents not just bad law, but also bad grammar. New Hampshire Insurance Co. v. Westlake Hardware, Inc., 201 F.3d 448, (10th Cir. 1999), 1999 WL 1066836, at *3 (argument that the word "negligent" modifies the word "act" but not the words "error" or "omission"

> Assuming, only for the sake of discussion, that the distributors had suffered property damage within the meaning of the policy, the termination of the distribution agreements was not an "accident," a word which, by definition, implies the unexpected. Rather the termination of the agreements was a calculated business decision by Smartfoods itself.
>
> ….
>
> Common sense is not a stranger to the interpretation of insurance policies. Insofar as the emergent doctrine of reasonable expectations may have any application, we do not suppose that a vendor of a food product, when purchasing comprehensive liability insurance, expects that it will cover legal costs attendant on commercial disputes with, for example, its distributors which arise out of their contractual arrangements rather than from the actual purveying of the product. That would transform the policy to comprehensive litigation insurance.

Id. (internal citations omitted).

Simply put, the Utica policy never was intended to make Utica a guarantor of Massamont's deliberate and calculated business decisions. There simply is no coverage for this claim under the Utica policy. Therefore, this Court should enter summary judgment in Utica's favor on Massamont's claims for declaratory judgment and breach of contract with respect to Utica's failure to defend (Counts I & III).

---

defies "basic grammatical principles").

**C.     Utica is Entitled to Summary Judgment on Counts IV & VI of Massamont's Complaint (Duty to Indemnify) Because: (1) Utica Had No Duty To Defend Massamont; And (2) The Facts Established At The Arbitration Demonstrate The Absence of A Covered Claim.**

**1.     Utica Has No Duty To Indemnify Because It Had No Duty To Defend.**

Because Utica had no duty to defend Massamont against Westchester's claims, it has no duty to indemnify Massamont against the arbitrators' award. Under Massachusetts law, an insurer's duty to defend is broader than its duty to indemnify. B&T Masonry Constr. Co., Inc. v. Public Service Mutual Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004) (applying Massachusetts law). Massamont has admitted that the claims tried in the arbitration did not vary from those set forth in the Arbitration Demand. (Complaint, ¶¶ 57, 72, 80). It follows logically, therefore, that if Utica had no duty to defend Massamont in the arbitration, it could have no duty to indemnify Massamont against the arbitrators' award. See Bagley v. Monticello Insurance Company, 430 Mass. 454, 720 N.E.2d 813, 817 (1999) ("If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify"); Liberty Mutual Ins. Co. v. Metropolitan Life Ins. Co., 260 F.3d 54, 62 (1st Cir. 2001) (jury's finding that insurer had no duty to defend also negated duty to indemnify, because duty to defend is broader than duty to indemnify).  Thus, Utica is entitled to entry of summary judgment on Counts IV and VI of the Complaint.

**2.     Utica Has No Duty To Indemnify Because The Facts Established At The Arbitration Demonstrate The Absence Of A Covered Claim.**

Further, even if the Court were to analyze whether Utica had a duty to indemnify independently from whether it had a duty to defend, the result would be the same. The question

15

of whether an insurer has a duty to indemnify is resolved by comparing the facts established at trial with the language of the policy.  Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mutual Ins. Co., 396 Mass. 633, 638, 487 N.E.2d 1371, 1374 (1986) ("The [insurer] is not necessarily bound to satisfy the potential judgment against [the insured], since the facts at trial may fall within a policy exclusion, or [the insured] may fail to satisfy certain conditions of the insurance agreement"); USX Corp. v. Adriatic Insurance Co., 99 F. Supp. 2d 593, 614 (W.D. Pa. 2000) ("it is the actual basis for liability in the underlying action which determines whether there is a duty to indemnify, not whether the underlying course of conduct involved historical facts which could be marshaled to support a covered claim"); Palmer v. Truck Ins. Exchange, 988 P.2d 568, 576 (Cal. 1999) (insurer "has a duty to indemnify only where a judgment has been entered on a theory which is *actually* (not potentially) covered by the policy") (emphasis in original).  This Court may determine as a matter of law whether the award entered against Massamont was a "loss" covered by the Policy by reviewing the arbitration pleadings, transcript, and exhibits.

In this case, the arbitration panel found in favor of Westchester and awarded it $2.6 million.  (Statement of Undisputed Facts, ¶ 20).  There is no evidence suggesting that the arbitration panel found in favor of Westchester based on any loss that is covered under the Policy. (Id.)  Westchester's only claim at the arbitration was that Massamont had breached the Agreement with Westchester by transferring program business to Axis and by sharing confidential information with Axis.  (Id. at ¶ 21).  Westchester never alleged in any arbitration pleading that it was entitled to recover damages from Massamont because of Massamont's negligent acts, errors,

16

or omissions in placing program business under its agreement with Westchester. To the contrary, Westchester's only claim was that Massamont intentionally had diverted that business to Axis. (Id.) At the arbitration, Westchester offered fact and expert testimony that illustrated only one thing – that Massamont had made a calculated business decision to divert the program business to Axis, and that Massamont's decision caused Westchester to suffer damages. (Id.)

In sum, there is no genuine issue of material fact as to whether Utica must indemnify Massamont for the award that was obtained by Westchester at the arbitration. Because Utica's policy (as discussed above in Section B) does not provide coverage for losses resulting from an insured's deliberate decision to breach a contract, Utica has no duty to indemnify Massamont for the arbitration award. Accordingly, this Court should enter summary judgment in Utica's favor on Massamont's claims for declaratory judgment and breach of contract with respect to Utica's duty to indemnify (Counts IV & VI).

### D. Utica is Entitled to Summary Judgment on Counts II & V of Massamont's Complaint (Breach of Chapters 93A and 176D) Because Utica Had No Duty To Defend Or Indemnify Massamont.

Massamont's claims that Utica violated Chapters 93A and 176D are entirely derivative of Massamont's breach of contract claims and thus moot. Where Chapter 93A claims are derivative of underlying claims and do not arise out of separate and distinct conduct, the Chapter 93A claims fail as a matter of law where the underlying claims fail. Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 85-86, 809 N.E.2d 1045, 1050 (2004) (Chapter 93A claims based on alleged breach of contract failed where court concluded that no contract existed between the parties); Frohberg v. Merrimack Mut. Fire Ins. Co., 34 Mass. App. Ct. 462, 465, 612 N.E.2d 273,

275-76 (1993) (affirming entry of summary judgment on insured's claims under Chapters 93A and 176D, where insurer had not breached duty to defend or indemnify); LoCicero v. Hartford Ins. Group, 25 Mass. App. Ct. 339, 518 N.E.2d 530, 534 (1988) (where court rejected plaintiff's primary claims, it did not consider plaintiff's claim under Chapters 93A and 176D, as those claims were entirely derivative of the primary claims).

Here, Massamont's claims under Chapters 93A and 176D are entirely derivative of its claims against Utica for breach of the duties to defend and indemnify because those claims are not predicated on conduct separate and distinct from the underlying claims. In the paragraph concluding Count II of the Complaint, Massamont demands judgment against Utica for its "Chapter 93A violations *arising out of the breach of its duty to defend* Massamont against Westchester's Demand for Arbitration . . . ." (emphasis added). Similarly, in the paragraph concluding Count V of the Complaint, Massamont demands judgment against Utica for its "Chapter 93A violations *arising out of the breach of its duty to indemnify* Massamont for the amount of the [arbitration] Award . . . ." (emphasis added).

Because Massamont's claims for breach of the duty to defend and indemnify are without merit, its claims under Chapters 93A and 176D must be dismissed. Cantell v. Hill Holiday Connors Cosmopulos, 55 Mass. App. Ct. 550, 556, 772 N.E.2d 1078, 1083 (2002) (Chapter 93A claim derivative of contract and quantum meruit claims properly dismissed where underlying claims dismissed). Therefore, Utica is entitled to entry of summary judgment on Massamont's claims for violations of Chapters 93A and 176D.

## IV. CONCLUSION

For the reasons set forth above, Utica had no duty to defend Massamont against Westchester's Arbitration Demand or to indemnify it for the arbitration award. Accordingly, Utica respectfully requests that this Honorable Court enter an Order granting summary judgment on behalf of Utica as to all claims brought against it in this matter.

        UTICA MUTUAL INSURANCE
        COMPANY

        By its attorneys,

        /s/ Jacob A. Labovitz
        _____
        Russell F. Conn, Esq. (BBO#94440)
        Erin K. Higgins, Esq. (BBO#559510)
        Jacob A. Labovitz, Esq. (BBO#646967)
        CONN KAVANAUGH ROSENTHAL
        PEISCH & FORD, LLP
        Ten Post Office Square
        Boston, MA 02110
        (617) 482-8200

Dated: May 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system on May 8, 2006, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

        /s/ Jacob A. Labovitz
        _____
        Jacob A. Labovitz

244828.1