UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
MASSAMONT INSURANCE                 )
AGENCY, INC.                        )
                                    )
        Plaintiff,                  )
                                    )   CIVIL ACTION NO. 05-11897-WGY
v.                                  )
                                    )
UTICA MUTUAL INSURANCE              )
COMPANY                             )
                                    )
        Defendant.                  )
_____ )

**UTICA MUTUAL INSURANCE COMPANY'S OPPOSITION
TO MASSAMONT INSURANCE AGENCY, INC.'S MOTION
<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant Utica Mutual Insurance Company ("Utica") hereby submits this opposition to the Motion for Partial Summary Judgment filed by Massamont Insurance Agency, Inc. ("Massamont"). In further opposition to Massamont's motion, Utica also relies on and incorporates by reference its motion for summary judgment in this matter, filed on May 8, 2006, and its accompanying memorandum of law.

**I.      <u>INTRODUCTION</u>**

As demonstrated by the parties' cross-motions for summary judgment, this matter is ripe for disposition as a matter of law. The material facts are set forth in Utica's Local Rule 56.1 Statement, and Utica will not repeat those facts here. Instead, Utica will use this opposition memorandum to address certain inaccuracies in Massamont's summary judgment brief regarding the law pertinent to this dispute, and the application of that law to the agreed facts.

## II.   ARGUMENT

### A.   Massamont Incorrectly Suggests That An Insurer Has An Affirmative Obligation To Discover Facts That Potentially Could Bring A Claim Within A Policy's Insuring Agreement.

As set forth in Utica's summary judgment brief, an insurer's duty to defend is determined by comparing the allegations of the complaint with the language of the policy. Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146, 461 N.E.2d 209, 212 (1984). If the allegations are reasonably susceptible of embracing a covered claim, then the insurer must assume the insured's defense. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003). If, on the other hand, the allegations lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant. Id. at 394-95, 788 N.E.2d at 530.

Massamont does not dispute that these maxims govern this Court's determination of whether Utica correctly determined that it had no duty to defend Massamont.  (Massamont's Summary Judgment Brief, pp. 8-9). Massamont incorrectly argues, however, that the insurer must go much farther than Massachusetts law provides. Massamont contends that the insurer, even if the complaint does not state a covered claim, must affirmatively discover through investigation whether there are any facts that potentially could bring the claim within the policy's coverage. (Id. at p. 9). This is an incorrect statement of Massachusetts law. It is the *insured* who bears the burden of proving that a claim falls within a policy's insuring agreement. Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140, 424 N.E.2d 464, 465 (1981). Moreover, the Supreme Judicial Court expressly has stated that an insurer is relieved of *any* duty to investigate if the allegations of the complaint expressly fall outside of the policy's coverage. See Sullivan, 439 Mass. at 394-95, 788 N.E.2d at 530. In this case, Westchester's demand for arbitration clearly and specifically identified the acts for which Westchester sought damages. Because those

2

allegations placed the claim outside of Utica's insuring agreement, Utica had no duty to investigate further.

In support of its argument that Utica had an affirmative duty to discover facts that potentially could bring the claim within the policy's insuring agreement, Massamont cites to two cases, <u>Desrosiers v. Royal Ins. Co. of America</u>, 393 Mass. 37, 40, 468 N.E.2d 625 (1984) and <u>Hingham Mutual Fire Ins. Co. v. Niagara Fire Ins. Co.</u>, 46 Mass. App. Ct. 500, 707 N.E.2d 390 (1999), neither of which stands for that proposition.  In <u>Desrosiers</u>, the Supreme Judicial Court held that an insurance company could consider a fact known to all parties, but not alleged in the underlying complaint, in applying an exclusion that barred coverage for a particular type of claim.  393 Mass. at 40, 468 N.E.2d 625.  In <u>Hingham Mutual</u>, the Massachusetts Appeals Court held that an automobile insurer, in determining whether a claim was stated within its policy, had an obligation to consider information that had been forwarded to it by another insurance company.  46 Mass. App. Ct. at 503, 707 N.E.2d at 392-93.  Thus, these cases stand for the unremarkable proposition that an insurer is entitled to, and indeed must, consider facts known to the insurer in making its coverage determination, even if those facts are not alleged in the complaint.  Neither case supports Massamont's contention, that an insurer faced with a clearly non-covered claim must nevertheless launch a coverage investigation in a futile attempt to create coverage.

      **B.**    **Massamont Incorrectly Argues That Westchester's Arbitration Demand Alleged Losses Arising Out Of Massamont's Past Deficiencies In <u>Administering Program Business.</u>**

In a strained attempt to create coverage where none ever existed, Massamont attempts to portray Westchester's Arbitration Demand as seeking to recover damages for Massamont's past deficiencies in administering program business, as opposed to damages incurred by Westchester when Massamont secretly transferred the program business to a Westchester competitor.

(Massamont Summary Judgment Brief, p. 11-12).  Even a cursory review of the Arbitration Demand, however, demonstrates that this argument has no merit.  The Demand sought damages from Massamont *only* for Massamont's intentional act of transferring program business to Axis in violation of the exclusivity provisions of the agreement, and any information provided regarding the past history of the parties' relationship was provided solely as background.  This is clear from the first substantive paragraph of the Demand in which Westchester summarizes its position as follows:

> In entering into the Agreement, Westchester relied on Massamont's promise to be the exclusive managing general agent on behalf of Westchester for the Program.  To that end, believing that Massamont would continue to act as the exclusive managing general agent in accord with the Agreement, Westchester invested substantial money and effort with respect to the Program.  **It would not have done so had it known that Massamont would breach Section IX.B of Exhibit A to the Agreement.**  Westchester would suffer and did suffer certain damages if this Agreement terminated prematurely.  (emphasis added)

(Utica's Statement of Undisputed Facts, ¶ 14).[1]

Further, in the last substantive paragraph of the Demand, Westchester summed up its claim by stating:

> In this arbitration, Westchester seeks to recover all damages to Westchester caused by Massamont's breach of the exclusivity provision in the Agreement.  Such damages will be specified in Westchester's initial arbitration submission.

(Id.)

---

[1]  Section IX.B of Exhibit A to the Agreement is the exclusivity provision of the Agreement, which stated as follows:

> During the term of this Agreement AGENT will not solicit for any other insurance carrier, except COMPANY, the Program business.  If COMPANY elects not to write such business, then AGENT is granted the right to submit such business to other insurance carriers under the same terms and conditions as presented to COMPANY.

(Id. at 8).

4

Massamont has not cited to any provision of the Arbitration Demand that seeks relief for any "act, error, or omission" other than the transfer of program business to Axis, and indeed there is no such allegation in the demand. Thus, this Court should summarily reject Massamont's argument that the mere presence of background facts concerning the parties' past relationship somehow could create a covered "loss" within the meaning of Utica's policy. See Policy, Section II(1)(e) ("loss" must arise out of "wrongful acts" committed in the conduct of insured's business).

### C.  Massamont Incorrectly Argues That Utica's Policy Covers Breach Of Contract Claims Premised On Calculated Business Decisions.

Massamont next argues, as an alternative to the baseless argument referenced above, that Westchester's Arbitration Demand was in fact focused on the transfer of program business to Axis, but that the transfer of business was a "negligent act, error, or omission" within the policy's insuring agreement. Essentially, Massamont argues that because it did not subjectively *appreciate* that its transfer of the program business was a breach of contract, it did not *intend* to breach the contract, and therefore its conduct can be characterized as an "error" within the meaning of Utica's professional liability insurance policy. Amazingly, Massamont claims that a liability policy such as Utica's "is not limited to acts of negligence or fault" on the part of insureds, but instead extends to conduct such as Massamont's, which made an intentional and calculated business decision to transfer program business to Axis.

Massamont cites to USM Corp. v. First State Ins. Co., 420 Mass. 865, 652 N.E.2d 613 (1995), and two out-of-state cases referenced in that decision,[2] as support for this quite

---

[2] Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 65 (1st Cir. 2000); Transcontinental Ins. Co. v. Caliber One Indemnity Co., 367 F.Supp.2d 994 (E.D. Va. 2005).

5

extraordinary proposition. None provides that authority. Utica has discussed the USM case exhaustively in its summary judgment brief, at pp. 12-13, and will not repeat that discussion here, except to state that there was no suggestion in that case that the insured vendor had made a calculated business decision to supply a computer system that did not meet the required specifications.

As to the two out-of-state cases, neither is on point. Home Ins. Co., which was decided under Maine law, concerned a dispute between two carriers as to which policy provided coverage for the alleged negligent acts of a law firm. See 229 F.3d at 65. As might be expected, the bulk of the opinion dealt with the clash of "other insurance" clauses contained in the respective policies. The court also considered whether certain admittedly negligent acts could be deemed to have occurred in the "performance of legal services," where those acts occurred years after the attorney-client relationship had ended. The court ultimately determined that the question did not have to be resolved, because the carrier had a duty to defend the law firm against at least some of the claims in the complaint, and therefore the allegations regarding the later acts, even if not part of the firm's legal services, had to be defended against as well. Id. at 65-66. In *dicta*, however, the court also noted that a lawyer's fiduciary obligations to a client are ongoing, and therefore the later acts likely were committed in the "performance of legal services." Id. at 65. This case, then, does not stand for the proposition that an intentional breach of contract is a "negligent act, error or omission."

In Transcontinental Ins. Co., decided under Virginia law, the insured, a commercial sprinkler installer and inspector, was sued by one of its customers for breach of contract and breach of warranty for improperly installing and maintaining a sprinkler systems. 367 F. Supp. 2d. at 996-1000. The court held that the determination of whether there had been a "negligent act,

error, or omission" turned on the nature of the act the insured was alleged to have committed, rather than the form of action chosen by the plaintiff in asserting its claim. Id. at 1002-03. The court noted that the complaint against the sprinkler installer was devoid of any suggestion that the contractor's failures were intentional, and instead alleged a failure to perform the work "in a good and workmanlike manner." Id. at 1005. The court therefore held the exclusion to the policy inapplicable. This case, of course, is distinguishable from the instant case, where Westchester's Arbitration Demand was devoid of any suggestion that Westchester's damages were caused by Massamont's failure to perform its responsibilities as an agent "in a good and workmanlike manner," and instead alleged a deliberate and secret attempt to deprive Westchester of program business.

     USM also cites to Wyman-Gordon Co. v. Liberty Mut. Ins. Co., 2000 WL 34024139 (Mass. Super. Ct. 2000), an unreported Superior Court decision of no precedential value here. In that case, Wyman-Gordon had purchased a commercial general liability policy with an Employee Benefits Liability Insurance endorsement. The endorsement required Liberty Mutual to pay damages resulting from "injury to the rights or interests of employees or their beneficiaries in 'employee benefit programs' … caused by any improper advice, error or admission in the 'administration' of such programs." A class of claimants alleged that a change made by the company to its employee benefit program constituted a breach of the company's duties under that program. The court found that the claim was covered by the policy. In that case, of course, in contrast to the situation presented here, the risk insured against was exactly the type of claim presented against the policy.

7

In sum, Massamont can cite to no precedent to support its argument that Utica's policy should be interpreted as providing coverage for a claim premised on a calculated business decision to breach a contract.  In fact, Massachusetts courts have recognized that a liability policy, contrary to Massamont's contention, *is* intended to protect insureds against acts of negligence or fault as opposed to deliberate conduct.  See <u>Smartfoods, Inc. v. Northbrook Property and Cas. Co.</u>, 35 Mass. App. Ct. 239, 242-43, 618 N.E.2d 1365, 1367-68 (1993) (insured's interpretation of policy as covering fallout from poor business decision would transform liability policy into "comprehensive litigation insurance").  Because Massamont's act of secretly transferring a book of business to Axis was not a "wrongful act," as defined in the policy, Utica had no duty to defend Massamont against the consequences of that conduct.

### D.     Massamont Incorrectly Argues That Its Transfer of Program Business Was An Act Committed In Rendering Or Failing To Render Professional Services As A General Agent For Westchester.

Massamont struggles even more mightily to characterize its secret transfer of program business to Axis as an act "committed in the conduct of the insured's business, …. in rendering or failing to render professional services" as a general agent for Westchester.[3]  Unfortunately, the very examples cited by Massamont in its brief undercut this argument.  Massamont claims that its

---

[3]     Utica's insuring agreement requires as follows:

> (e)     The 'loss' must arise out of 'wrongful acts' committed in the conduct of the insured's business, wherever committed or alleged to have been committed, by the insured or any person for whose 'wrongful acts' the insured is legally liab*le* in rendering or failing to render professional services as:
>
> (1)     A General Insurance Agent;
>
> ….

agreement with Westchester required Massamont to perform "specialized underwriting, record-keeping, reporting, claims-adjustment, pricing, and file management activities." Massamont then claims that its conduct in transferring the book of business which it was supposed to administer for Westchester *to a competitor of Westchester's* somehow "arose from its alleged rendering or failing to render such services." This argument is patently without merit.

Massamont then states that "surely, if a school or municipality insured under the [] program were to claim that Massamont erred by placing its coverage with an insurer that subsequently went into receivership, such alleged 'error'" would satisfy the 'rendering or failing to render professional services' requirement of Utica's policy. Utica agrees with that contention, but Massamont's example simply highlights what the policy language covers – claims that Massamont erred in rendering the professional services required under the agency agreement – and what it does not – a claim that Massamont acted to deprive the other party to the agreement of the benefits of the agreement. Put another way, and using the language cited by Massamont in its brief, it did not require any "specialized knowledge or skill" for Massamont to breach the exclusivity provisions of the agreement, nor did the decision to breach involve any of the "specialized underwriting, record-keeping, reporting, claims-adjusting, pricing and file management" purportedly specified in the agreement. See Jefferson Ins. Co. of New York v. National Union Fire Ins. Co. of Pittsburgh, PA., 42 Mass. App. Ct. 94, 677 N.E.2d 225 (1997) ("professional services" exclusion not applied where act causing harm required nothing more than normal intelligence of the ordinary prudent person).

Massamont further undercuts its own argument by citing to Roe v. Federal Ins. Co., 412 Mass. 43, 587 N.E.2d 214 (1992). In that case, a dentist who sexually assaulted one of his patients sought coverage (through an assignee) under an insurance policy that had a clause similar

9

to the one at issue here.  Id. at 47, 216.  In analyzing whether the sexual assault was covered by the policy, the Court looked to whether there was a causal relationship between the alleged harm and the complained-of professional service.  Id.  The court concluded that there was no causal connection, because the dentist's sexual assaults did not occur in the rendering of his professional services as a dentist.  Id. at 49, 218.

The dentist in Roe fell into the same trap as does Massamont here – just because an act that causes harm *concerns* the professional services provided by the insured does not mean that the act *was committed in rendering* those professional services.  This Court therefore should rule as a matter of law that Massamont's deliberate breach of its agency agreement with Westchester was not an act committed in the conduct of Massamont's business, in rendering or failing to render professional services.

### E.   Massamont's Argument With Respect To Its Claim That Utica Breached Its Duty To Indemnify Massamont Is Not On-Point.

As Utica argued in its summary judgment brief, because an insurer's duty to defend is broader than its duty to indemnify, it logically follows that an insurer that had no duty to defend an insured could not have breached its duty to indemnify.  See Bagley v. Monticello Ins. Co., 430 Mass. 454, 720 N.E.2d 813, 817 (1999) ("If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify.").  As set forth above and in Utica's summary judgment brief, Utica had no duty to defend Massamont against Westchester's claims, and therefore logically could not have a duty to indemnify Massamont against the arbitration award.

Massamont does not contest that this is the result required under Massachusetts law, should this Court determine that Utica had no duty to defend.  Instead, Massamont uses the last

four pages of its summary judgment brief (pp. 17-20) to argue that if Utica breached its duty to defend Massamont, Utica cannot now contest its liability to indemnify Massamont against the arbitrators' award. Massamont's argument, while lengthy, is irrelevant, because as set forth above Utica had no duty to defend Massamont. Massamont's argument, moreover, misstates pertinent Massachusetts law.

Massamont contends that Utica is not entitled to sift through the testimony and evidence admitted at the arbitration "in a 'Monday morning' attempt to divine the thoughts of the individual arbitration panel members" for purposes of disclaiming its alleged duty to indemnify. To the contrary, in determining whether it must indemnify Massamont, Utica is permitted to engage in just that type of analysis. The duty to indemnify *is* determined by comparing the facts established at trial, or in this case the arbitration, with the language of the policy. Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mutual Ins. Co., 396 Mass. 633, 638, 487 N.E.2d 1371, 1374 (1986) ("The [insurer] is not necessarily bound to satisfy the potential judgment against the [insured], since the facts at trial may fall within a policy exclusion, or [the insured] may fail to satisfy certain conditions of the insurance agreement"); see also USX Corp. v. Adriatic Insurance Co., 99 F.Supp. 2d 593, 614 (W.D. Pa. 2000) ("it is the actual basis for liability in the underlying action which determines whether there is a duty to indemnify, not whether the underlying course of conduct involved historical facts which could be marshaled to support a covered claim"). Based on a review of all of the arbitration pleadings, testimony, and exhibits, there is no evidence to suggest that the arbitrators found Massamont liable for anything other than its intentional breach of contract. (Utica's Summary Judgment Brief, pp. 16-17).

Massamont correctly states that, if a lawsuit contains covered and uncovered claims, an insurance company that breached its duty to defend has the burden of proving an allocation of the

11

judgment amount between the covered and uncovered claims. See Liquor Liability Joint Underwriting Ass'n v. Hermitage Ins. Co., 419 Mass. 316, 323, 644 N.E.2d 964, 970 (1995). In this case, however, not only did Utica not breach its duty to defend, but there were no "covered" and "uncovered" claims. Westchester made only one claim against Massamont – that it deliberately and secretly breached the agency agreement by transferring the book of business of Axis. All of the testimony and documentary evidence admitted at the arbitration proceedings were offered in support of or in opposition to that claim, and Massamont has not even bothered to suggest otherwise in its brief. Thus, Massamont's lengthy discussion of the burden of proof placed on a "defense-defaulting insurer" to allocate a damages award between "covered and uncovered claims" bears no relevance to the coverage issues to be decided by this Court.

### III.     CONCLUSION

For the above-stated reasons, Utica respectfully requests that the Court deny plaintiff's partial motion for summary judgment in its entirety and grant Utica summary judgment in accordance with its Motion for Summary Judgment.

## REQUEST FOR HEARING

Utica requests that the Court hear argument on the parties' cross-motions.

UTICA MUTUAL INSURANCE COMPANY

By its attorneys,

/s/ Jacob A. Labovitz
_____
Russell F. Conn, Esq. (BBO#94440)
Erin K. Higgins, Esq. (BBO#559510)
Jacob A. Labovitz, Esq. (BBO#646967)
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02110
(617) 482-8200

Dated:  May 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system on May 26, 2006, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Jacob A. Labovitz
_____
Jacob A. Labovitz

254648.1