UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-11897-WGY

_____
                                                    )
MASSAMONT INSURANCE                )
AGENCY, INC.,                                     )
                                                    )
                        Plaintiff,              )
                                                    )
UTICA MUTUAL                               )
INSURANCE COMPANY,                   )
                                                    )
                        Defendant.          )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UTICA MUTUAL
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

On May 5, 2006, the plaintiff, Massamont Insurance Agency, Inc. ("Massamont"), filed a

Motion for Partial Summary Judgment in the above-captioned matter, seeking summary judgment

against the defendant, Utica Mutual Insurance Company ("Utica"), on the insurance coverage Counts

of plaintiff's Complaint (Counts I, III, IV & VI). Three days later, on May 8, 2006, the defendant

filed its own Motion for Summary Judgment on *all* Counts of the plaintiff's Complaint, including

those seeking recovery under M.G.L. c. 93A. Thus, the parties are in agreement that no material

issues of fact remain in dispute with respect to Utica's duty to defend Massamont against the third-

party claim of Westchester Fire Insurance Company ("Westchester") under the terms and provisions

of Utica's Insurance Agents and Brokers Errors and Omissions Liability Policy (the "E&O Policy")

(Counts I & III), and/or with respect to Utica's duty to indemnify Massamont under the E&O Policy

for the full amount of the $2,600,000 arbitration award entered against Massamont and in favor of

Westchester. (Counts IV & VI). The parties dispute, however, the scope of coverage afforded under

the E&O Policy, or the application of such coverage to Westchester's Demand for Arbitration and

the subsequent $2,600,000 arbitration award. Massamont also denies, contrary to Utica's assertion, that no material issues of fact remain in dispute with respect to Utica's unfair or deceptive acts or practices in violation of Chapter 93A.

In the face of the parties' cross-motions, this Court should allow plaintiff's Motion for Partial Summary Judgment by entering summary judgment in Massamont's favor on Counts I, III, IV and VI of its Complaint. This Court should also deny defendant's Motion for Summary Judgment on *all* Counts (including those asserted under Chapter 93A). Then, upon the completion of discovery, the Court should schedule this matter for trial on plaintiff's Chapter 93A claims (Counts II & V) only.

Massamont submits this Memorandum in Opposition to Utica's Motion for Summary Judgment. In further Opposition to Utica's Motion for Summary Judgment, Massamont attaches hereto copies of:

- Utica's Objections and Responses to plaintiff's Request for Admissions under Fed. R. Civ. 36, together with copies of documents described in said Request; and

- Plaintiff's Answers to Defendant's First Set of Interrogatories.

## I.  UTICA BREACHED ITS DUTY TO DEFEND MASSAMONT UNDER THE E&O POLICY.

In its Motion for Summary Judgment, Utica first argues that it did not owe a duty to defend Massamont because Westchester, in its Demand for Arbitration, "sought to recover damages arising only out of Massamont's intentional breach of its contractual obligations, and not from any

negligent, acts, errors or omissions committed in rendering professional services."[1]  (Utica's Memorandum in Support of Motion for Summary Judgment, at 10).  According to Utica, it owes "no duty to defend an insured [under its E&O Policy] against breach of contract claims arising out of deliberate business decisions."  (Id.)  Utica's position, however, rests on a selectively narrow reading of Westchester's Demand for Arbitration and a misunderstanding of Massachusetts law.

A.    *Westchester's Demand for Arbitration*

The third-party claimant's Demand for Arbitration[2] must be read in its entirety in order to determine what kinds of losses may be "envisaged"[3] as lying within the range of allegations pled, "then seeing whether *any such loss* fits the expectations of protective insurance reasonably generated by the terms of the policy."  Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12-13 (1989).  Contrary to this mandate, Utica relies only on selective passages within the Demand to conclude that Westchester's claim falls outside the scope of coverage afforded under the E&O Policy.  In so doing, it conveniently ignores or discounts those allegations or passages that do not neatly serve its coverage conclusion.

For example, Utica attempts to characterize Westchester's claim as a *single* claim for breach of Massamont's duty to place business with Westchester.  (See Utica's Memorandum, at 13-14). That characterization, however, flies in the face of the Demand wherein Westchester and its affiliated

---

[1]  Interestingly (as discussed further below), this ground for disclaiming its duties to defend and indemnify was not communicated by Utica to Massamont until seventeen months *after* Massamont tendered its demand for coverage, and more than three months *after* the arbitration hearing concluded.  See Affidavit of Hilbert Schenck II, Exhibit "L1."  By that time, all that remained was for the arbitration panel to issue its damage award.

[2]  Id., Exhibit "H."

[3]  "Envisage," the word used by the Supreme Judicial Court, means "to conceive an image or picture of, esp. as a future possibility . . .."  American Heritage Disctionary.  This is consistent with the SJC's admonition that a mere "possibility" of coverage is sufficient to invoke the duty to defend.  Simplex Technologies, Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199 (1999).

companies "demand arbitration of their *claims* against Massamont . . . *as described below*," and

wherein Westchester stated its intent to "pursue[] its damage *claims* against Massamont in this

arbitration."[4]  A description of such "claims" was then provided below in the "Background" section

of the Demand.  In the first sentence of that section, Westchester expressly alleged that Massamont

"was obligated to perform certain underwriting services" under the Agency Agreement.[5]

Westchester then proceeded to describe, at great length, the various ways in which Massamont failed

to perform such underwriting services, or did so in an "unsatisfactory" manner or in a way that "fell

short of required standards."[6]  Following the "Background" section, Westchester articulated its

claims by criticizing Massamont's subsequent discussions with Axis Specialty Insurance Company

("Axis.")[7]  Clearly, however, Westchester was concerned not only with Massamont's participation

in such discussions, but also in the Program business as a whole.  "*All of the foregoing* constituted

a violation or breach of the exclusivity provision and *certain other provisions* of the [Agency]

---

[4]  Affidavit of Hilbert Schenck II, Exhibit "H," at page 1.

[5]  Id., Exhibit "H," at page 2.

[6]  The sequence preceding Massamont's alleged breach of the Agency Agreement is described in detail in Westchester's Demand as follows: (1) in November 2002, Westchester detected numerous "deficiencies" in Massamont's handling of the Metrogard and Diplomax Programs during an audit, including, but not limited to, Massamont's failure to "sufficiently consider individual risk characteristics" when evaluating insureds, failure "to correctly price windstorm risks," and failure to maintain "adequate files" on certain risks; (2) pre-February 2003, Westchester determined (due, in part, to Massamont's substandard performance) that premiums on the Metrogard and Diplomax Programs "were not sufficient to generate an adequate underwriting profit"; (3) in February 2003, Westchester requested a 40% increase on future Program premiums, but Massamont "objected" to its request; (4) on February 24, 2003, Westchester and Massamont mutually agreed to a 25% increase on future Program premiums; (5) in late April 2003, another audit of Massamont conducted by Westchester revealed the same "deficiencies" in performance Westchester had allegedly observed five months earlier, including improper loss analysis, improper deductible adjustments, and improper premium adjustments; (6) Massamont agreed to implement certain Program changes to improve its performance, including providing individual account information to Westchester "as early as possible" so that Westchester could provide prospective insureds with timely quotes; (7) despite such changes, "Massamont failed to submit accounts in a timely fashion, causing backlogs and delays." Id., Exhibit "H," at pages 3-4. Massamont disputed many of these allegations throughout the arbitration proceeding.

[7]  Affidavit of Hilbert Schenck II, Exhibit "H," at page 5.

Agreement."[8]  Utica states in its Memorandum that "[t]here is no allegation in the Arbitration

Demand that . . . Massamont breached the standard of care applicable to Massamont's performance

of its insurance-related duties under the agreement." (Utica's Memorandum, at 7).  As demonstrated

above, this statement is simply not true.

B.    *The E&O Policy Provides Coverage for Breach of Contract*

Utica states that it owes no duty to defend or indemnify Massamont against breach of contract

claims arising out of deliberate business decisions. (Utica Memorandum, at 10).  Yet, even if this

were an accurate summarization of Westchester's claims (which Massamont denies), Utica's

statement contradicts both the language of the E&O Policy and Massachusetts law.  The E&O Policy

provides coverage for "losses" arising out of "wrongful acts."  A "wrongful act," in turn, is defined

as "any negligent act, error, or omission to which this insurance applies."[9]  As construed by the

Massachusetts Supreme Judicial Court (and as binding up on Utica), the phrase "negligent act, error,

or omission" must be interpreted to cover more than mere negligent conduct.  In USM Corp. v. First

State Ins. Co., 420 Mass. 865, 867 (1995), the Court held a breach of warranty claim covered under

identical policy language.[10]  In reaching this conclusion, the SJC cited several out-of-state cases

where similar language was held to cover breach of contract or other non-negligent claims.  See, e.g.,

Aitchison v. Founders Ins. Co., 166 Cal. App. 2d 432, 438-439, 333 P.2d 178, 182 (1958) (term

"error" construed to cover customer's demand for refund of illegal payments); Continental Casualty

---

[8]  Id.

[9]  Id., Exhibit "A."

[10]  Utica attempts to distinguish the USM decision by characterizing it as the "minority view." (Utica's Memorandum, at 12 n.2).  Regardless of whether it represents the "minority" or "majority" view, the SJC decision in USM is the law that controls the interpretation of Utica's E&O Policy. Utica was not free to ignore that decision in choosing to deny a defense to Massamont against Westchester's claims.

Co. v. Cole, 809 F.2d 891, 895-96 (D.C. Cir. 1987) (District of Columbia law) (policy held to cover breach of contract and breach of fiduciary duty claims); Bank of California, N.A. v. Opie, 663 F.2d 977, 980 & n.4 (9th Cir. 1981) (Washington law) (professional liability policy held to cover claim for breach of contract).

Utica's exclusive focus on Westchester's alleged theory of liability against Massamont is misplaced. An insurer's duty to defend is determined not by the theories of liability alleged in the complaint but, rather, by the "source" from which the third-party claimant's injuries or damages originate. Bagley v. Monticello Ins. Co., 430 Mass. 454, 458 (1999), quoting New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass. App. Ct. 722, 727 (1996). Here, the "source" of Westchester's damages can only be found by reading the *entire* Demand for Arbitration, including the "Background" section, not merely those allegations selectively identified by Utica.

In Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7 (1989), the third-party claimant, Vanessa Redgrave, brought suit for breach of contract against the Boston Symphony Orchestra based on its cancellation of her performance as narrator in Igor Stravinsky's "Oedipus Rex." The BSO apparently cancelled the concert after receiving messages of protest concerning Redgrave's engagement. The BSO tendered the defense of the Redgrave lawsuit to its CGL insurer, Commercial Union Insurance Company, which, in turn, denied coverage on the grounds that Redgrave's claim did not qualify as a "personal injury" within the meaning of the "personal injury liability coverage" since it did not state a cause of action for defamation. In subsequent litigation between the BSO and Commercial Union, however, the SJC ruled in favor of the insured. Because "the essence of Redgrave's claim . . . was that the BSO's breach of contract somehow spoke slightingly about her and damaged her reputation," her complaint was "'reasonably

susceptible' of stating a claim that would fall within the zone of covered injuries." Id., 406 Mass. at 12 (citation omitted).

The "essence" of Westchester's claims, particularly in light of its exhaustive criticisms of Massamont's sub-standard underwriting, reporting and record-keeping, was "reasonably susceptible" of invoking coverage under the E&O Policy. This is so regardless of whether the claims were framed as ones for breach of contract based on deliberate business decisions by Massamont.

C.    *The E&O Policy Provides Coverage for Deliberate Conduct*

Massachusetts courts have long held that the unintended results of deliberate or volitional acts may still find coverage under liability insurance policies. Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 97 (1997); Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 84 (1984). Only when the resulting harm was intended by the insured may coverage not be available. Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 401-402 (1999) (intent to injure inferred as a matter of law from forcible sexual abuse); City of Newton v. Krasnigor, 404 Mass. 682, 685-86 (1989) (intent to cause property damage inferred as a matter of law from setting of fire).

Here, coverage does not turn (as it does in the cases cited above) on the meaning of the term "accident," or on whether the claimant's damages were "expected or intended" from the standpoint of the insured. The E&O Policy contains no such language upon which Utica can hang its hat. For that reason alone, Utica's reliance in its Memorandum on the decision of Smartfoods, Inc. v. Northbrook Property and Casualty Co., 35 Mass. App. Ct. 239 (1993), is out of place. There, the CGL policy at issue provided liability coverage for damages because of bodily injury or property damage caused by an "occurrence," which was defined in the policy as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the

insured." Id., 35 Mass. App. Ct. at 242. An "accident," stated the Court, contemplates the unexpected. And, since the insured's termination of certain agreements was not unexpected but, instead, a "calculated business decision," the claimant's damages, as result, were not caused by an "occurrence." Id.

The E&O Policy does not cover "occurrences" or "accidents"; it covers "losses" arising out of "wrongful acts." Thus, use of the Smartfoods case to interpret the E&O Policy is like comparing apples and oranges. But, even if Massamont's "deliberateness" is somehow an appropriate factor to be weighed in the coverage mix (which Massamont denies), Utica was not free to disclaim coverage to Massamont since any harm suffered by Westchester was not intended by Massamont. As set forth in the Affidavit of Hilbert Schenck II (and as explained to Utica during its investigation,) Westchester had expressed a disinterest in writing future Metrogard and Diplomax Program business before Massamont ever transferred the business to Axis.[11] Moreover, the accounts placed with Axis were written on terms previously rejected by Westchester.[12] Thus, even if Westchester's claims resulted from deliberate business decisions made by Massamont, the resulting harm was not intended by Massamont. Certainly, Utica was not free to conclude otherwise when it disclaimed any duty to defend or indemnify on March 4, 2004. See Wyman-Gordon Co. v. Liberty Mut. Ins. Co., 2000 WL 34024139 (Mass. Super. Ct., July 14, 2000) (employee benefits liability endorsement in CGL policy provided coverage for liability caused by "improper advice, error or omission" held to include claims for breach of contract arising from deliberate change in insured's benefit policies).

---

[11] Affidavit of Hilbert Schenck II, ¶ 23.

[12] Id., ¶ 25. Utica has not rebutted these facts as provided under Fed.R.Civ.p.56(e).

## II.    UTICA BREACHED ITS DUTY TO INDEMNIFY MASSAMONT UNDER THE E&O POLICY.

In the recent decision of <u>Peterborough Oil Co., Inc. v. Great American Ins. Co.</u>, 397 F. Supp. 2d 230 (D. Mass. 2005), the Court discussed the consequences that befall a liability insurer that wrongfully fails to defend its insured:

> The general rule under Massachusetts law is that, "if the insurer fails to defend the lawsuit, it is liable for all defense costs and (assuming policy coverage) the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims." . . . If liability cannot be so allocated, then the insurer is liable for the entire judgment.

<u>Id.</u>, 397 F. Supp. 2d at 243-44.  There, the third-party claimant asserted claims against Great American's insured for both malicious prosecution and intentional infliction of emotional distress. While the CGL policy provided coverage for the claim of malicious prosecution, it did not cover the claim for intentional infliction of emotional distress.  Nevertheless, Great American denied all coverage to its insured and refused to provide it with a defense.  At the underlying trial, the jury found against the insured and awarded the claimant $300,000 in damages without distinguishing between her two claims.  Since it failed to defend its insured, Great American was responsible for the full $300,000.  "Because there is no way at present to allocate between the covered and noncovered claims, Great American is liable to [its insured] for the entire amount of the judgment." <u>Id.</u>, 397 F. Supp. 2d at 244.

Utica defaulted on its duty to defend Massamont and, therefore, it now stands in the same position as Great American.  There is no way to allocate the $2,600,00 damage award between covered and uncovered claims.  It would be pure speculation to plumb the minds of the arbitrators at this late date in an effort to discern what they were thinking at the time they rendered their

decision.  Thus, Utica must pay the entire amount of the award.

### III.    UTICA ENGAGED IN UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF CHAPTER 93A.

In its Complaint, Massamont asserts claims for relief against Utica based on the defendant's incomplete and inadequate investigation of Westchester's claims, failure to act promptly upon communications with Massamont concerning such claims, failure to provide promptly a reasonable explanation of the basis in the E&O Policy for its disclaimer of coverage, and misrepresentation of the E&O Policy provisions.  (Counts II & V).  M.G.L. c. 93A, § 11 provides that any business (such as Massamont) that suffers damages caused by another business (such as Utica) who engages in "an unfair or deceptive act or practice declared unlawful [under M.G.L. c. 93A, § 2]," may bring an action to recover for such damages.  To qualify as "unfair or deceptive," the practice need not reach immoral, unethical, oppressive or unscrupulous proportions, "but need only be within any recognized or statutory concept of unfairness." Federal Ins. Co. v. HPSC, Inc., 2005 WL 2206071, *2 (D. Mass. 2005), quoting VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 620 (1994).

M.G.L. c. 176D, § 3(9), identifies various "unfair or deceptive acts or practices in the business of insurance . . .." And, while a violation of Chapter 176D, Section 3(9), allows a consumer to recover under Chapter 93A, Section 9 (without regard to whether the practice was unlawful under Chapter 93A, Section 2), Section 11 of Chapter 93A (the business to business remedy) contains no such reference to the prohibitions of Chapter 176D, Section 3(9).  In other words, Section 11, unlike Section 9, "does not grant an independent right to recover for violations of [Chapter 176D, Section 3(9)]". M. DeMatteo Construction Co. v. Century Indemnity Co., 182 F. Supp. 2d 146, 160 (D. Mass. 2001), quoting Polaroid Corp. v. Travelers Indemnity Co., 414 Mass. 747, 754 (1993).

-10-

This does not mean, however, that an insurer may freely engage in practices prohibited by Chapter 176D, Section 3(9), without fear of liability to businesses under Chapter 93A, Section 11. Courts have frequently held that conduct that violates Chapter 176D may also be actionable under Chapter 93A, Section 11. Federal Ins. Co., supra, 2005 WL 2206071, *2; J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 145-46 (D. Mass. 2005); M. DeMatteo, supra, 182 F. Supp. 2d at 160-61. The acts alleged by Massamont in Counts II and V of its Complaint – the inadequate investigation, the delay in communications, the failure to provide a prompt basis for its coverage denial, and its misrepresentations – are all proscribed as "unfair or deceptive" claims-handling practices in Chapter 176D. See M.G.L. c. 176D, §§ 3(9)(a), (b), (c) & (n). Thus, Massamont has stated a viable claim for recovery against Utica under Chapter 93A.

Whether Utica engaged in "unfair or deceptive" acts or practices in its handling of Massamont's demand for coverage presents questions of fact. Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 372 (1996); Bobick v. United States Fidelity & Guar. Ins. Co., 57 Mass. App. Ct. 1, 3-4, aff'd in part, 439 Mass. 652 (2003). As demonstrated by Utica's Objections and Responses to plaintiff's Request for Admissions under Fed. R. Civ. 36 (attached hereto), by Plaintiff's Answers to Defendant's First Set of Interrogatories (also attached hereto), and by the Affidavit of Hilbert Schenck II (attached to plaintiff's Motion for Partial Summary Judgment), the facts demonstrate that Utica did indeed violate the provisions of Chapter 176D, § 3(9), in its handling of Massamont's demand for coverage under the E&O Policy. Those facts include, but are not limited to:

1. Despite the complex nature of Westchester's claim, and the voluminous file materials in Massamont's possession potentially relevant thereto, Utica consistently gave short shrift to Massamont's request for liability coverage made on October 28, 2003. Four weeks after

Massamont's tender, Utica retained the services of Robert B. Burkitt of R.M.G. Investigations in Quincy to investigate the claim. After another month, Mr. Burkitt met with representatives of Massamont on December 22, 2003, to conduct interviews and to review file documentation *for a mere 1.9 hours* (2.6 hours *less* than it actually took Mr. Burkitt to travel to and from Massamont's offices in Greenfield, Massachusetts.) (Utica's Admissions No. 4 - 8; Affidavit of Hilbert Schenck, ¶¶ 30-33).

2. On five occasions over the next two months, Utica contacted Mr. Burkitt to inquire about the status of his investigation. (Utica's Admissions No. 11, 13, 14 & 15, and Exhibit 1).

3. Finally, on February 26, 2004 (four months after Massamont's demand for coverage), Mr. Burkitt sent an "Initial Report" to Utica dated January 22, 2004, a report for which he billed Utica 3.5 hours in preparation. (Utica's Admissions, Exhibits 1 & 3).

4. It appears, from R.M.G.'s invoice, that Mr. Burkitt conducted no investigation of Westchester's third-party claim after his meeting with Massamont representatives on December 22, 2003, and prior to the preparation of his "Initial Report." (Utica's Admissions No. 19, and Exhibit 4; Affidavit of Hilbert Schenck II, ¶ 34; Plaintiff's Answers to Interrogatories, No. 2).

5. It also appears, from R.M.G.'s invoice, that Mr. Burkitt made no attempts during his investigation to communicate with Westchester or its attorneys about the nature of the third-party claim against Massamont, nor any attempts to communicate with Axis to corroborate the information communicated by Massamont and/or obtain additional documentation. (Utica's Admissions No. 19, and Exhibit 4; Plaintiff's Answers to Interrogatories, No. 2).

6. Mr. Burkitt did not immediately forward to Utica copies of the file materials and other

-12-

documents he had obtained and reviewed from Massamont.  (Utica's Admissions No. 32).

7.  In his "Initial Report," Mr. Burkitt concluded it was "arguable" that the dispute between Westchester and Massamont "is simply not an E&O matter," but nonetheless chose to defer any coverage decision "to your [Utica's] office and/or expert opinion/legal counsel." (Utica's Admissions, Exhibit 3).

8.  Utica accepted Mr. Burkitt's proffered conclusion and immediately denied coverage to Massamont.  By letter dated March 4, 2004 (over four months after Massamont's tender), Utica disclaimed all coverage to Massamont for Westchester's third-party claim.  By virtue of this disclaimer, Utica refused to defend Massamont against Westchester's claim, and further refused to indemnify Massamont for any amount Westchester might recover in arbitration.  (Utica's Admissions No. 32, and Exhibit 5; Affidavit of Hilbert Schenck II, ¶ 35, and Exhibit "I").

9.  Utica issued its denial without awaiting or reviewing copies of Massamont's documents and file materials.  (Utica's Admissions No. 32 & 36).  Indeed, on the same day it disclaimed coverage to Massamont, Utica belatedly requested Mr. Burkitt to send it copies of the documents and file materials he presumably reviewed in arriving at his "arguable" conclusion.  (Utica's Admissions, Exhibit 1).  Mr. Burkitt forwarded such copies to Utica on March 8, 2004, four days *after* the date of Utica's denial.  (Utica's Admissions No.34 & 35, and Exhibit 7).

10.  Utica did not offer Massamont a defense under a reservation of rights, nor did it commence a declaratory judgment action.  (Utica Admissions No. 43; Affidavit of Hilbert Schenck II, ¶ 37).

11. In its initial disclaimer letter dated March 4, 2004, Utica denied coverage to Massamont on six grounds, ranging from Massamont's alleged execution of the agreement with Westchester prior to the "retroactive date," to Exclusion 6 (for claims by an entity "owned, operated, managed, or controlled by the insured"), to Exclusion 18 (for claims arising out of the insured's activities as a "third-party administrator.") One of the six grounds upon which Utica relied - Exclusion 1 for "dishonest, fraudulent, malicious or criminal conduct" – expressly states that Utica "*will defend*" its insured against such claims, but will not indemnify it for any judgment based upon such conduct. (Affidavit of Hilbert Schenck II, Exhibit "I").

12. Westchester's Demand for Arbitration does not seek recovery for "dishonest, fraudulent, malicious or criminal conduct." (Affidavit of Hilbert Schenck II, Exhibit "H.")

13. When Massamont, through counsel, subsequently requested Utica to reconsider its coverage position and immediately assume Massamont's defense, Utica "modified" its previous denial by letter dated March 31, 2005. In its second denial letter, Utica reasserted its previous disclaimer of coverage, but "disavowed" (its own term) five of its previous six grounds for denial, reaffirmed the sole remaining ground, then raised four *new* grounds. Curiously, the only ground that Utica reaffirmed was Exclusion 1 for "dishonesty," etc., the provision that specifically obligated the insurer to defend its insured, pending a finding of such dishonesty through arbitration or trial. (Affidavit of Hilbert Schenck, Exhibits "K1" & "L1").

14. For seventeen (17) months after Massamont originally tendered its demand for coverage to Utica, the only grounds for denial communicated to Massamont by Utica were the five

subsequently "disavowed" grounds and Exclusion 1 for "dishonesty." During this time, Massamont was forced to retain counsel, at its own cost and expense, to defend itself in the arbitration proceeding. (Affidavit of Hilbert Schenck II, ¶¶ 30 & 38, and Exhibits "I" and "L1").

15. By the time Utica issued its second denial letter dated March 31, 2005, the arbitration proceeding was concluded. Westchester and Massamont were merely awaiting the decision of the arbitrators. (Affidavit of Hilbert Schenck II, ¶¶ 39 & 41).

16. One of the *new* grounds for denial cited by Utica in its second denial letter dated March 31, 2005 concerned the definitions of "loss" and "wrongful act" within the meaning of the E&O Insuring Agreement, and the alleged failure of Westchester's claim to arise out of a "wrongful act" in the "rendering or failing to render professional services . . .." And, although Utica cited numerous out-of-state cases in support of this ground, it failed to mention the one SJC decision on point (USM Corp. v First State Ins. Co., 420 Mass. 865 (1995)) which *directly contradicted its position.* (Affidavit of Hilbert Schenck, Exhibit "L1").

17. In its second denial letter dated March 31, 2005, Utica also claimed (for the first time) that it was entitled to rescind the E&O Policy, that coverage was eliminated by Exclusion 19 (applicable to claims arising out of the disclosure of "trade secrets or confidential or proprietary information"), and that Massamont had breached the duty of cooperation. (Affidavit of Hilbert Schenck, Exhibit "L1").

18. When counsel for Massamont likewise challenged this second denial, Utica shifted its stance once again. By letter dated May 19, 2005, Utica restated its denial on the ground that

Westchester's claim did not arise of a "wrongful act" in the "rendering or failing to render professional services . . .," but this time attempted to distinguish the controlling USM decision by fashioning a so-called "professional advice" requirement not found in the E&O Policy. Utica also continued to rely upon Exclusion 1 ("dishonesty'), but admitted it had "decided not to pursue" its rights to rescind the E&O Policy, and was "withdrawing" its disclaimer based on Massamont's lack of cooperation. Exclusion 19 (regarding "trade secrets") was omitted. (Affidavit of Hilbert Schenck, Exhibit "L2").

19. By letter dated June 15, 2005, Utica issued its final coverage denial. There, Utica stood by its no "wrongful act" ground for disclaimer, as well as Exclusion 1. It also resurrected Exclusion 19 (regarding "trade secrets.") (Affidavit of Hilbert Schenck, Exhibit "L2").

As the above facts demonstrate, Utica conducted an incomplete and inadequate investigation of Westchester's claims, failed to act promptly upon communications with Massamont concerning such claims, failed to provide promptly a reasonable explanation of the basis in the E&O Policy for its disclaimer of coverage, and misrepresented E&O Policy provisions to Massamont. As a result, Utica is not entitled to summary judgment on Counts II and V of the plaintiff's Complaint.

Alternatively, as discovery is not yet complete, the plaintiff requests a continuance pursuant to Fed. R. Civ. P. 56(f) so that depositions may be completed on the issues raised under Counts II and V of plaintiff's Complaint. Specifically, the plaintiff intends to depose (1) the Keeper of the Records of R.M.G. Investigations; (2) Robert B. Burkitt; and (3) the defendant's Rule 30(b)(6) witness(es) regarding the handling of plaintiff's demand for coverage under the E&O Policy.

## IV.    **CONCLUSION**

For the reasons stated above, the plaintiff requests that this Court allow plaintiff's Motion for Partial Summary Judgment by entering summary judgment in Massamont's favor on Counts I, III, IV and VI of its Complaint, and deny defendant's Motion for Summary Judgment on *all* Counts (including those asserted under Chapter 93A). Then, upon the completion of discovery, the Court should schedule this matter for trial on plaintiff's Chapter 93A claims (Counts II & V) only.

Respectfully submitted,
The Plaintiff,
MASSAMONT INSURANCE AGENCY, INC.,

By its attorneys,
**PIERCE, DAVIS & PERRITANO, LLP**

John J. Davis, BBO #115890
10 Winthrop Square
Boston, MA 02110
(617) 350-0950

Dated: May 30, 2006

-17-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSAMONT INSURANCE AGENCY, INC.<br><br>Plaintiff,<br><br>v.<br><br>UTICA MUTUAL INSURANCE COMPANY<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 05-11897-WGY

## OBJECTIONS AND RESPONSES OF DEFENDANT
## UTICA MUTUAL INSURANCE COMPANY

Pursuant to Mass. R. Civ. P. 36, Defendant Utica Mutual Insurance Company ("Utica") makes the following objections and responses to Plaintiff Massamont Insurance Agency, Inc.'s ("Massamont's") Requests for Admissions.

Request for Admission No. 1

On October 28, 2003, the plaintiff, Massamont Insurance Agency, Inc., tendered Westchester Fire Insurance Company's Demand for Arbitration to the defendant, Utica Mutual Insurance Company, for coverage under Utica Mutual Policy No. 3445032 EO.

Response No. 1

Utica objects to the term "tendered" as vague and ambiguous, and therefore Utica is unable to determine exactly what it is being asked to admit or deny. Subject to and without waiving its objection, Utica admits that on or about October 28, 2003, Utica received from plaintiff a copy of the demand for arbitration of Westchester Fire Insurance Company ("Westchester") and denies the remainder of Request No. 1.

Request for Admission No. 2

     The defendant, Utica Mutual Insurance Company, internally assigned claim No. 732751 to plaintiff's demand for coverage under Utica Mutual Policy No. 3445032 EO.

Response No. 2

     Utica admits that it internally assigned Claim Number 732751 to Westchester's demand for arbitration and denies the remainder of Request No. 1.

Request for Admission No. 3

     The 11-page document attached hereto as Exhibit 1 is a true, accurate and complete copy of defendant's internal claims notes (subject to redactions made by defense counsel) concerning Utica Mutual claim No. 732751, generated from the date of defendant's receipt of said claim up to and including February 10, 2006.

Response No. 3

     Admitted.

Request for Admission No. 4

     On November 24, 2003, the defendant, Utica Mutual Insurance Company, assigned the investigation of claim No. 732751 to Robert B. Burkitt of R.M.G. Investigations, Quincy, Massachusetts.

Response No. 4

     Utica admits that on November 23, 2003, it retained the services of Robert B. Burkitt of R.M.G. Investigations, Quincy, Massachusetts, to conduct an investigation of Claim Number 732751. Utica denies the remainder of Request No. 4.

Request for Admission No. 5

On November 24, 2003, the defendant Utica Mutual Insurance Company, retained Robert B. Burkitt of R.M.G. Investigations, Quincy, Massachusetts, to assist the defendant in the investigation of claim No. 732751.

Response No. 5

Utica admits that on November 23, 2003, it retained the services of Robert B. Burkitt of R.M.G. Investigations, Quincy, Massachusetts, to conduct an investigation of Claim Number 732751. Utica denies the remainder of Request No. 5.

Request for Admission No. 6

A true and accurate copy of Utica Mutual's assignment to Robert B. Burkitt of R.M.G. Investigations (without enclosures) is attached hereto as Exhibit 2.

Response No. 6

Utica admits that Exhibit 2 is a true and accurate copy of the 11/24/03 facsimile cover page sent from Utica to Robert B. Burkitt of R.M.G. Investigations. Utica denies the remainder of Request No. 6.

Request for Admission No. 7

On December 22, 2003, Robert B. Burkitt of R.M.G. Investigations met with Hilbert Schenck II and David Dawson at the offices of the plaintiff, Massamont Insurance Agency, Inc., 324 Main Street, Greenfield, Massachusetts.

Response No. 7

Utica is without knowledge or information sufficient to admit or deny Request No. 7. Further responding, Utica states that it is informed and believes that the allegations of Request No. 7 are true.

Request for Admission No. 8

During the December 22, 2003 meeting referenced in Request No. 7 above, Mr. Burkitt interviewed Massamont employees and reviewed file documentation.

Response No. 8

Utica is without knowledge or information sufficient to admit or deny Request No. 8. Further responding, Utica states that it is informed and believes that the allegations of Request No. 8 are true.

Request for Admission No. 9

During the December 22, 2003 meeting referenced in Request No. 7 above, Mr. Burkitt was acting as the agent and/or representative of the defendant, Utica Mutual Insurance Company.

Response No. 9

Utica objects to this request on the grounds that the term "representative" is vague and ambiguous.  Subject to and without waiving its objections, Utica denies this request.

Request for Admission No. 10

Following the December 22, 2003 meeting referenced in Request No. 7 above, Mr. Burkitt requested no further meetings with, or documentation from, the plaintiff, Massamont Insurance Agency, Inc.

Response No. 10

Utica is without knowledge or information sufficient to admit or deny Request No. 10. Further responding, Utica states that it is informed and believes that Mr. Burkitt requested documents from Massamont that were not supplied to him.

Request for Admission No. 11

The defendant, Utica Mutual Insurance Company, contacted Mr. Burkitt to request a report regarding the status of his investigation of claim No. 732751 on January 14, 2004.

Response No. 11

Utica admits that on January 14, 2004, it contacted Mr. Burkitt regarding his investigation of Claim No. 732751.

Request for Admission No. 12

The defendant, Utica Mutual Insurance Company, contacted Mr. Burkitt to request a report regarding the status of his investigation of claim No. 732751 on January 29, 2004.

Response No. 12

Denied.

Request for Admission No. 13

The defendant, Utica Mutual Insurance Company, contacted Mr. Burkitt to request a report regarding the status of his investigation of claim No. 732751 on February 6, 2004.

Response No. 13

Utica admits that on February 5, 2004, Utica contacted Mr. Burkitt regarding his investigation of Claim No. 732751.

Request for Admission No. 14

The defendant, Utica Mutual Insurance Company, contacted Mr. Burkitt to request a report regarding the status of his investigation of claim No. 732751 on February 18, 2004.

Response No. 14

Utica admits that on February 18, 2004, it contacted Mr. Burkitt regarding his investigation of Claim No. 732751.

Request for Admission No. 15

The defendant, Utica Mutual Insurance Company, contacted Mr. Burkitt to request a report regarding the status of his investigation of claim No. 732751 on February 26, 2004.

Response No. 15

Utica admits that on February 26, 2004, it contacted Mr. Burkitt regarding his investigation of Claim No. 732751.

Request for Admission No. 16

On or after Thursday, February 26, 2004, the defendant, Utica Mutual Insurance Company, received for the first time Mr. Burkitt's "Initial Report" of his investigation of claim No. 732751.

Response No. 16

Denied.

Request for Admission No. 17

A true and accurate copy of Mr. Burkitt's "Initial Report" to the defendant, Utica Mutual Insurance Company, regarding his investigation of claim No. 732751, is attached hereto as Exhibit 3.

Response No. 17

Denied.

Request for Admission No. 18

Copies of the Massamont file materials and other documents reviewed by Mr. Burkitt during his investigation of claim No. 732751 were not forwarded to the defendant, Utica Mutual Insurance Company, together with the "Initial Report."

Response No. 18

Utica is without knowledge or information sufficient to admit or deny Request No. 18.

Request for Admission No. 19

A true and accurate copy of R.M.G. Investigations' first invoice for services rendered to the defendant, Utica Mutual Insurance Company, in connection with Mr. Burkitt's investigation of claim No. 732751 is attached hereto as Exhibit 4.

Response No. 19

Utica admits that Exhibit 4 is a true and accurate copy, as redacted, of R.M.G. Investigations' first invoice for services rendered to Utica in connection with claim No. 732751.

Request for Admission No. 20

Mr. Burkitt spent a total of 1.9 hours interviewing Massamont employees and reviewing file documentation on December 22, 2003.

Response No. 20

Utica is without knowledge or information sufficient to admit or deny Request No. 20.

Request for Admission No. 21

Mr. Burkitt spent a total of 1.9 hours interviewing Massamont employees and reviewing file documentation prior to drafting his "Initial Report" to the defendant, Utica Mutual Insurance Company.

Response No. 21

Utica is without knowledge or information sufficient to admit or deny Request No. 21.

Request for Admission No. 22

Mr. Burkitt spent a total of 3.5 hours preparing, dictating, reviewing and finalizing his "Initial Report" to the defendant, Utica Mutual Insurance Company.

Response No. 22

Utica is without knowledge or information sufficient to admit or deny Request No. 22.

Request for Admission No. 23

On Tuesday, March 2, 2004, Mark M. Ribnikar, Senior E&O Claims Specialist for the defendant, Utica Mutual Insurance Company, determined that a "disclaimer [was] in order" with respect to claim No. 732751.

Response No. 23

Utica objects to the term "determined" as vague and ambiguous. Subject to and without waiving its objection, Utica admits that it issued a letter disclaiming coverage with respect to claim No. 732751 on March 4, 2004. Utica denies the remainder of Request No. 23.

Request for Admission No. 24

On Tuesday, March 2, 2004, Paul E. Walters, Manager of Errors and Omissions Claims for the defendant, Utica Mutual Insurance Company, determined that a "disclaimer [was] in order" with respect to claim No. 732751.

Response No. 24

Utica objects to the term "determined" as vague and ambiguous. Subject to and without waiving its objection, Utica admits that it issued a letter disclaiming coverage with respect to claim No. 732751 on March 4, 2004. Utica denies the remainder of Request No. 23.

Request for Admission No. 25

On Tuesday, March 2, 2004, Ray Cohen, an employee of Errors and Omissions Claims for the defendant, Utica Mutual Insurance Company, determined that a "disclaimer [was] in order" with respect to claim No. 732751.

Response No. 25

Utica objects to the term "determined" as vague and ambiguous. Subject to and without waiving its objection, Utica admits that it issued a letter disclaiming coverage with respect to claim No. 732751 on March 4, 2004. Utica denies the remainder of Request No. 23.

Request for Admission No. 26

On Tuesday, March 2, 2004, the defendant, Utica Mutual Insurance Company, determined that a "disclaimer [was] in order" with respect to claim No. 732751.

Response No. 26

Utica objects to the term "determined" as vague and ambiguous. Subject to and without waiving its objection, Utica admits that it issued a letter disclaiming coverage with respect to claim No. 732751 on March 4, 2004. Utica denies the remainder of Request No. 23.

Request for Admission No. 27

On Thursday, March 4, 2004, the defendant, Utica Mutual Insurance Company, issued a "disclaimer of coverage" to plaintiff, Massamont Insurance Agency, Inc., with respect to claim No. 732751.

Response No. 27

Admitted.

Request for Admission No. 28

A true and accurate copy of the "disclaimer of coverage" issued by the defendant, Utica Mutual Insurance Company, to the plaintiff, Massamont Insurance Agency, Inc., on or about March 4, 2004, is attached hereto as Exhibit 5.

Response No. 28

Admitted.

Request for Admission No. 29

On Thursday, March 4, 2004, Mark M. Ribnikar, Senior E&O Claims Specialist for the defendant, Utica Mutual Insurance Company, sent a copy of defendant's "disclaimer of coverage" to Mr. Burkitt by fax.

Response No. 29

Admitted.

Request for Admission No. 30

A true and accurate copy of Mr. Ribnikar's fax transmission to Mr. Burkitt dated March 4, 2004 (without enclosure) is attached hereto as Exhibit 6.

Response No. 30

Admitted.

Request for Admission No. 31

At the time the defendant, Utica Mutual Insurance Company, issued its "disclaimer of coverage" to the plaintiff, Massamont Insurance Agency, Inc. (a copy which is attached hereto as Exhibit 5), the defendant did not have in its custody or possession copies of the Massamont file materials and other documentation reviewed by Mr. Burkitt during his investigation of claim No. 732751.

Response No. 31

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica states that it is without knowledge or information sufficient to admit or deny Request No. 31.

Request for Admission No. 32

At the time the defendant, Utica Mutual Insurance Company, issued its "disclaimer of coverage" to the plaintiff, Massamont Insurance Agency, Inc. (a copy of which is attached hereto as Exhibit 5), neither Mark M. Ribnikar, nor Paul E. Walters, nor Ray Cohen, had in his custody or possession copies of the Massamont file materials and other documentation reviewed by Mr. Burkitt during his investigation of claim No. 732751.

Response No. 32

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica admits this request.

Request for Admission No. 33

On Thursday, March 4, 2004, Mr. Ribnikar requested Mr. Burkitt to forward the defendant, Utica Mutual Insurance Company, copies of the Massamont file materials and other documentation he had reviewed during his (Mr. Burkitt's) investigation of claim No. 732751.

Response No. 33

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica denies this request.

Request for Admission No. 34

Mr. Ribnikar received copies of the Massamont file materials and other documentation he had reviewed during his (Mr. Burkitt's) investigation of claim No. 732751 by correspondence from Mr. Burkitt dated March 8, 2004.

Response No. 34

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica admits this request.

Request for Admission No. 35

A true and accurate copy of Mr. Burkitt's correspondence to Mr. Ribnikar dated March 8, 2004, is attached hereto as Exhibit 7.

Response No. 35

Admitted.

Request for Admission No. 36

Neither Mark M. Ribnikar, nor Paul E. Walters, nor Ray Cohen, reviewed the Massamont file materials and other documentation reviewed by Mr. Burkitt during his investigation of claim No. 732751, prior to defendant's issuance of the "disclaimer of coverage" attached hereto as Exhibit 5.

Response No. 36

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica admits this request.

Request for Admission No. 37

Neither Mr. Burkitt nor R.M.G. Investigations conducted any further investigation into the coverage issue raised by claim No. 732751 from March 4, 2004 to April 26, 2005.

Response No. 37

Utica objects to this request to the extent that it assumes further investigation was necessary, and on the further grounds that the phrase "coverage issues" is vague and ambiguous. Subject to and without waiving these objections, Utica is without knowledge or information sufficient to admit or deny Request No. 37.

Request for Admission No. 38

The defendant, Utica Mutual Insurance Company, its agents, servants and employees conducted no further investigation into the coverage issues raised by claim No. 732751 from March 4, 2004 to April 26, 2005.

Response No. 38

Utica objects to this request to the extent that it assumes further investigation was necessary, and on the further grounds that the phrase "coverage issues" is vague and ambiguous. Subject to and without waiving these objections, denied.

Request for Admission No. 39

Prior to April 26, 2005, the defendant, Utica Mutual Insurance Company, neither adopted not implemented any standards for the prompt investigation of claims arising under its insurance policies, including, but not limited to, claims under its Insurance Agents and Brokers Errors and Omissions policies.

Response No. 39

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica denies this request.

Request for Admission No. 40

From 2000 to April 26, 2005, the defendant, Utica Mutual Insurance Company, neither drafted, followed, nor adopted any internal guidelines, manuals, policies, procedures, rules, regulations, notices or memoranda, concerning or related to the underwriting of Insurance Agents and Brokers Errors and Omissions Insurance policies in Massachusetts.

Response No. 40

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica denies this request.

Request for Admission No. 41

From 2000 to April 26, 2005, the defendant, Utica Mutual Insurance Company, neither drafted, followed, not adopted any internal guidelines, manuals, policies, procedures, rules, regulations, notices or memoranda, concerning or related to the investigation and/or handling of claims submitted under Insurance Agents and Brokers Errors and Omissions Insurance policies issued in Massachusetts.

Response No. 41

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica denies this request.

Request for Admission No. 42

The defendant, Utica Mutual Insurance Company, has in its possession, custody or control no guidelines, manuals, policies, procedures, rule, regulations, notices, memoranda or other documents concerning or related to the intent, meaning or interpretation of Insurance

Agents and Brokers Errors and Omissions Insurance policies issued in Massachusetts and in effect at any time from 2000 to the present.

Response No. 42

Utica objects to this request on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Utica denies this request.

Request for Admission No. 43

The defendant, Utica Mutual Insurance Company, did not commence an action for declaratory relief to determine the issues of coverage raised by claim No. 732751.

Response No. 43

Utica objects to this request for admission as it seeks information neither relevant to Massamont's claims nor likely to lead to the discovery of admissible evidence, and on the further grounds that the term "issues of coverage" is vague and ambiguous. Subject to and without waiving these objections, admitted.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 10th DAY OF MAY, 2006.

By:    Paul E. Walters
Its:    Claim Manager

As to objections:

Russell F. Conn, Esq. (BBO #094440)
Erin K. Higgins, Esq. (BBO #559510)
Jacob A. Labovitz, Esq. (BBO# 646967)
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
 Ten Post Office Square
 Boston, MA 02110
 (617) 482-8200

Dated:  May 15, 2006

## CERTIFICATE OF SERVICE

I certify that a true copy of this document was delivered by hand on May 15, 2006 to:

John J. Davis, Esq.
PIERCE, DAVIS & PERRITANO, LLP
10 Winthrop Square
Boston, MA 02110

Jacob A. Labovitz

252215.1

16

# EXHIBIT 1

PROG CR2797AL01

** U N I - C L A I M S **
UTICA NATIONAL INSURANCE GROUP
CLAIM: 0000732751 USER: W102T0360

REDACTED

PAGE......: 1

```
TYPE.........: H
REMARK.......: REVIEWED FILE ON DIARY - THE E+O EXAMINERS PRIOR STATUS REPORTS HAVE
               BEEN NOTED
SUBCLAIM.....:
CREATE DATE..: 2006/02/10
SERVICES ID..:
TECHNICAL ID.: U102T0806

TYPE.........: V
REMARK.......: THIS FILE WILL BE MAINTAINED ON A SHORT DIARY
               WHILE WE MONITOR DEVELOPMENTS DURING DISCOVERY.
SUBCLAIM.....:
CREATE DATE..: 2006/02/01
SERVICES ID..:
TECHNICAL ID.: W102T0B46

TYPE.........: A
REMARK.......: SUPERV REV  600 MMC EXP-12MIL/ RES 0K/ ALLEG
               BREACH OF CARR AGREEMENT/
SUBCLAIM.....:
CREATE DATE..: 2006/01/13
SERVICES ID..:
TECHNICAL ID.: W102T0KI6

TYPE.........: A
REMARK.......:
SUBCLAIM.....:
CREATE DATE..: 2006/01/13
SERVICES ID..:
TECHNICAL ID.: W102T0KI6

TYPE.........: A
REMARK.......:
SUBCLAIM.....:
CREATE DATE..: 2006/01/13
SERVICES ID..:
TECHNICAL ID.: W102T0KI6

TYPE.........: A
REMARK.......:
SUBCLAIM.....:
CREATE DATE..: 2005/12/19
SERVICES ID..:
TECHNICAL ID.: W102T0KI6

TYPE.........: A
REMARK.......:
SUBCLAIM.....:
CREATE DATE..: 2005/12/19
SERVICES ID..:
TECHNICAL ID.: W102T0KI6

TYPE.........: H
REMARK.......: REVIEWED FILE ON DIARY - THE E+O EXAMINERS PRIOR
               REMARKS HAVE BEEN NOTED
SUBCLAIM.....:
CREATE DATE..: 2005/12/13
SERVICES ID..: DC
TECHNICAL ID.: U102T0806
```

UTICA 002118

PROG CR2797AL01

TYPE, REMARK. . . . . . A
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/12/09
TECHNICAL ID. . . . . . W102TOKI6                    FILED ANNUAL RPT.

TYPE, REMARK. . . . . . A
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/12/09
TECHNICAL ID. . . . . . W102TOKI6

TYPE, REMARK. . . . . . A
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/12/09
TECHNICAL ID. . . . . . W102TOKI6                    CONFERENCED POTENTIAL ADR AS REQUIRED BY DISTRICT
                                                     COURTS

TYPE, REMARK. . . . . . D
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/11/17
TECHNICAL ID. . . . . . W102TOKI6                    ANNUAL REPORT DUE

TYPE, REMARK. . . . . . H
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/11/14
TECHNICAL ID. . . . . . U102T0806                    THIS FILE WILL BE MAINTAINED ON A SHORT DIARY
                                                     WHILE WE AWAIT A COPY OF THE ANSWER FILED ON
                                                     BEHALF OF UTICA.                              DC

TYPE, REMARK. . . . . . H
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/11/14
TECHNICAL ID. . . . . . U102T0806                    REVIEWED THE ON DIARY. THE POLICYHOLDER HAS
                                                     RETAINED FILED A SUIT AGAINST THE INSURED IN THE
                                                     UNITED STATES DISTRICT COURT OF MASSACHUSETTS.

TYPE, REMARK. . . . . . D
SUBCLAIM. . . . . . . .
LOSS AID. . . . . . . .
SERVICES ID . . . . . .
CREATE DATE . . . . . . 2005/10/31
TECHNICAL ID. . . . . . W102TOB46                    GGG MGC EXP-12MIL/ RES OK/ ALLEG BREACH OF CARR
                                                     AGREEMENT/
                                                     CHALLENGED/                 DISCLAIMER NOW

UTICA 002119

PROG CR2797AJ101

```
                          ** U N I - C L A I M S **
                          UTICA NATIONAL INSURANCE GROUP
                          CLAIM: 0000732751  USER: W102T0360
```

REDACTED

PAGE...... 3

```
TYPE, REMARK. . : A
SUBCLAIM. . . . :
CREATE DATE . . : 2005/10/19
SERVICES ID . . :
TECHNICAL ID  . : W102T0K16

TYPE, REMARK. . : A
SUBCLAIM. . . . :
CREATE DATE . . : 2005/10/19
SERVICES ID . . :
TECHNICAL ID  . : W102T0K16

TYPE, REMARK. . : A
SUBCLAIM. . . . :
CREATE DATE . . : 2005/10/19
SERVICES ID . . :
TECHNICAL ID  . : W102T0K16

TYPE, REMARK. . : H
SUBCLAIM. . . . :
CREATE DATE . . : 2005/10/12
SERVICES ID . . : U102T0806
TECHNICAL ID  . :

TYPE, REMARK. . : H    REVIEWED FILE ON DIARY.  THE B+O EXAMINERS PRIOR
SUBCLAIM. . . . :      REMARKS HAVE BEEN NOTED.
CREATE DATE . . : 2005/10/12
SERVICES ID . . : U102T0806
TECHNICAL ID  . :

TYPE, REMARK. . : D
SUBCLAIM. . . . :
CREATE DATE . . : 2005/08/29
SERVICES ID . . : U102T0806
TECHNICAL ID  . :

TYPE, REMARK. . : A
SUBCLAIM. . . . :
CREATE DATE . . : 2005/08/22
SERVICES ID . . :
TECHNICAL ID  . : W102T0K16

TYPE, REMARK. . : A
SUBCLAIM. . . . :
CREATE DATE . . : 2005/08/22
SERVICES ID . . :
TECHNICAL ID  . : W102T0K16
```

UTICA 002120

PROG CR3/7973AL01

** U N I - C L A I M S **
UTICA NATIONAL INSURANCE GROUP
CLAIM: 0000732751 USER: W102T0360

REDACTED

PAGE...... 4

TYPE.REMARK....: H
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/08/22
SERVICES ID....:
SERVICE ID.....:
TECHNICAL ID...: W102T0K16

REVIEWED FILE ON DIARY - THE R+O EXAMINERS PRIOR
REMARKS HAVE BEEN NOTED.

TYPE.REMARK....: A
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/08/11
SERVICES ID....:
SERVICE ID.....: U102T0806
TECHNICAL ID...:

TYPE.REMARK....: A
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/07/26
SERVICES ID....:
SERVICE ID.....: W102T0K16
TECHNICAL ID...:

TYPE.REMARK....: A
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/07/26
SERVICES ID....:
SERVICE ID.....:
TECHNICAL ID...: W102T0K16

TYPE.REMARK....: A
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/07/07
SERVICES ID....:
SERVICE ID.....:
TECHNICAL ID...: W102T0K16

NOTED SUPV REMARKS.

TYPE.REMARK....: H
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/07/07
SERVICES ID....:
SERVICE ID.....: U102T0806
TECHNICAL ID...:

RECEIVED CONVERSION -

TYPE.REMARK....: D
SUB.CLAIM......:
LOB............:
CREATE DATE....: 2005/07/01
SERVICES ID....:
SERVICE ID.....:
TECHNICAL ID...: W102T0846

250 MMC EXP 12MIL/ RES 0K/ ALLEG BREACH OF CARR
AGREEMENT/ - DISCLAIMER NOW
CHALLENGED/ REITERATED/ CONVERT
DISCLAIMER/

UTICA 002121

PROG CR4797JAL01

** U N I - C L A I M S **
UTICA NATIONAL INSURANCE GROUP
CLAIM: 000013751 USER: W102T0UG0

REDACTED

PAGE...... 5

TYPE. REMARK. . . . . . : V
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/07/01
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0B46

REVIEWED AND RELEASED CONVERSION REPORT
ACK

TYPE. REMARK. . . . . . : A
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/06/28
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0K16

COMPLETED ONLINE CONVERSION.

TYPE. REMARK. . . . . . : A
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/06/28
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0K16

NOTED SUPERV REMARKS.

TYPE. REMARK. . . . . . : V
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/06/23
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0B46

****MARC, HAS NOT OUR 5/13/05 CONFERENCE. FILE WILL
NEEDS TO BE COVERED.
ACK ****

TYPE. REMARK. . . . . . : A
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/06/01
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0K16

TYPE. REMARK. . . . . . : A
SUBCLAIM. . . . . . . . :
CREATE DATE . . . . . . : 2005/06/01
SERVICES ID . . . . . . :
TECHNICAL ID . . . . . . : W102T0K16

UTICA 002122

PROG CR2797AL01

** U N I - C L A I M S **
UTICA NATIONAL INSURANCE GROUP
CLAIM: 000713771 USER: W102T0X60

REDACTED

PAGE....... 6

TYPE....... D

TYPE REMARK.......
SUBCLAIM.......
LOBA.......
CREATE DATE....... 2005/05/23
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

TYPE REMARK....... MET W. PM AND AK.
SUBCLAIM....... A
LOBA.......
CREATE DATE....... 2005/05/13
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

TYPE REMARK....... CONFERENCED MATTER W/ AK AND WE AGREE TO MEET W/
PM TO DISCUSS HOW TO PROCEED.
SUBCLAIM....... A
LOBA.......
CREATE DATE....... 2005/05/11
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

TYPE REMARK....... CONFERENCE W/ AK AND PM AND I WILL RECOMMEND HO.
CONVERSION.
SUBCLAIM....... A
LOBA.......
CREATE DATE....... 2005/05/11
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

TYPE REMARK....... ON THE ALLEGATIONS CONTA...
LETTER EXCEEDS 3 MILLION THEREFORE I NEED TO...
THE EXPOSURE TO UTICA. BASED
INS.CO. COUNSELS
SUBCLAIM....... A
LOBA.......
CREATE DATE....... 2005/05/11
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

TYPE REMARK.......
SUBCLAIM....... A
LOBA.......
CREATE DATE....... 2005/05/11
SERVICES ID....... W102T0X16
TECHNICAL ID....... W102T0X16

UTICA 002123

PROG CR2797AL01

```
** U N I - C L A I M S **
UTICA NATIONAL INSURANCE GROUP
CLAIM: 0000732751 USER: W102T0J60
```

REDACTED

PAGE...... 7

```
TYPE REMARK. . .    A
SUBCLAIM. . .
CREATE DATE.        2005/05/06          D/C CORRN FORWARDED A LETTER FROM THE INSD
SERVICES ID.                            ATTORNEY ADVISING AN ARB TRANSFER MADE AN AWARD
TECHNICAL ID.       W102T0K16           AGAINST THE INSD FOR 2.6 MILLION. THE LETTER
                                        DEMANDS WE PAY THE AWARD AS WELL AS LEGAL COSTS.

TYPE REMARK. . .    D
SUBCLAIM. . .
CREATE DATE.        2005/04/01          250 MWC EXP 12 MIL/ RES 0K/ ALLEG BREACH OF
SERVICES ID.                            CARRIER, AGREEM/          DISCLAIMER NOW
TECHNICAL ID.       W102T0B46

TYPE REMARK. . .    A
SUBCLAIM. . .
CREATE DATE.        2005/03/29          CHALLENGED/ DISCLAIMER/ REITERRATED
SERVICES ID.
TECHNICAL ID.       W102T0K16

TYPE REMARK. . .    A
SUBCLAIM. . .
CREATE DATE.        2005/03/28
SERVICES ID.
TECHNICAL ID.       W102T0K16

TYPE REMARK. . .    A
SUBCLAIM. . .
CREATE DATE.        2005/02/07
SERVICES ID.
TECHNICAL ID.       W102T0K16

TYPE REMARK. . .    D
SUBCLAIM. . .
CREATE DATE.        2005/01/17          INSURED CHANGE REQ'ENS SUBCLAIM/CLAIM FILE
SERVICES ID.                            USERID=W102T0B46
TECHNICAL ID.       W102T0B38

TYPE REMARK. . .    D
SUBCLAIM. . .
CREATE DATE.        2005/01/14          250 MWC EXP 12 MIL/ RES 0K/ ALLEG BREACH OF
SERVICES ID.                            CARRIER, AGREEM/          DISCLAIMER NO
TECHNICAL ID.       W102T0B46           CHALLENGED/ COV COUNSEL RPT
```

```
PROG CR2797AU01              ** U N I - C L A I M S **                    PAGE...... 8
                         UTICA NATIONAL INSURANCE GROUP
                       CLAIM: 000073275L USER: W102TOJ80          REDACTED
```

TYPE. REMARK..
SUBCLAIM...
SERVICES ID
CREATE DATE..    2004/12/08
TECHNICAL ID     W102TOK16
                 A
RECEIVED A LETTER FROM A/C COUNSEL. REVIEWED FILE
DOC'S.

TYPE. REMARK..
SUBCLAIM...
SERVICES ID
CREATE DATE..    2004/12/08
TECHNICAL ID     W102TOK16
                 A
FILE REVIEWED. ALTHOUGH I THOUGHT THERE MIGHT BE
A COVERAGE POSITION FROM INSD RE OUR COVERAGE POSITION
OTHERS HAS BEEN NONE APPEARS THE FILE CAN BE SAFELY
CLOSED WITH THIS ENTRY. MR

TYPE. REMARK..
SUBCLAIM...
SERVICES ID
CREATE DATE..    2004/09/20
TECHNICAL ID     W102TOJ53
                 A

TYPE. REMARK..
SUBCLAIM...
SERVICES ID
CREATE DATE..    2004/05/27
TECHNICAL ID     W102TOB46
                 D
250 MMR EXP. 12MI CHGES OK/GREEN/ APPEARS 'NO COV AS
DOES NOT MEET THE GRANT OF COV'+INSD A TPA?'/ AS
DISCLAIMER SENT/ RESPONSE/ CLOSED"

TYPE. REMARK..
SUBCLAIM...
SERVICES ID
CREATE DATE..    2004/03/19
TECHNICAL ID     W102TOJ53
                 A
TELE CALL FROM DAVE DAWSON OF THE AGENCY 3-18-04.
HE ASKED FOR A COPY OF THEIR POLICY I TOOK THE
RECD AND I ADVISED DAVE THAT I WOULD BE REFERRING HIS
REQUEST TO THE UNDRTG DEPT. MR

TYPE. REMARK..
SUBCLAIM...
SERVICES ID     W102TOJ53
CREATE DATE..    2004/03/09
TECHNICAL ID
                 A
REVIEWED FILE HAS AGENCY BEEN MAILED OUR COVERAGE
DAWSON AT THE AGENCY-HE RECD OUR LETTER. ASKED
POSITION UNTIL I WOULD DISCUSS W/MGT COV. COVERAGE

TYPE. REMARK..
SUBCLAIM...
SERVICES ID     W102TOJ53
CREATE DATE..    2004/03/09
TECHNICAL ID
                 A
TELE W/DAVE DAWSON OF THE AGENCY. THIS AM. THEY DO
HAVE ACCOUNT THEY ER ROLLED UP MONIES REGISTER
ACCOUNT(S) THEY DO NOT PERCEIVE THEM THE WORD
MONIES UNDER SERIA # I WOULD AS BEING UP TO THIS
W/MGT AND WE WOULD TALK AGAIN BEFORE THE WKEND. MR

UTICA 002125

PROG CR3797A101

UTICA NATIONAL INSURANCE GROUP
CLAIM: 000073291 USER: W102TQ030

** U N I - C L A I M S **

REDACTED

PAGE...... 9

---

TYPE. REMARK.                                    A
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/03/04
TECHNICAL ID.                                    W102TQJ53

AS AN ADDENDUM TO THE BELOW REMARKS I TOLD
BURKITT THAT WE NEVER DID RECEIVE A COPY OF THE
AGENCY'S FILE, ETC. HE WILL SEND A CC BY REGULAR
MAIL. MR

---

TYPE. REMARK.                                    A
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/03/04
TECHNICAL ID.                                    W102TQJ53

MR ION, CC OF THE LETTER FAXED TO RMG THIS DATE.

---

TYPE. REMARK.                                    A
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/03/04
TECHNICAL ID.                                    W102TQ053

COVERAGE DISCLAIMER DRAFTED AND APPROVED BY ACK.
PW AND HO CLAIMS--AND THE LETTER HAS BEEN SENT TO
THE AGENCY TO W MESSAGE SENT TO THE AGCY YESTERDAY
ADVISING THAT THE AGCY SHOULD CONSIDER RETAINING
THAT THE AGCY SHOULD CONSIDER RETAINING COUNSEL
PROCEEDINGS.OR, AND OFFERING OF OUR AND/OR INCOMI

---

TYPE. REMARK.                                    D
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/03/02
TECHNICAL ID.                                    W102TQB46

RCD WORK, EXIT (+PM) / RESA CKY / OR OUR INSTT--
R/CD MOR, EXIT (+PM) / RESA CKY / OR WE NEVER RECEIVED
R/ED BREACH OF CARRIER AGREEM / APPEARS NO COV AS
DISCLAIMER WRITTEN ORDER/ ART OF COV + INSD A TPA/
DISCLAIMER WRITTEN

---

TYPE. REMARK.                                    A
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/02/26
TECHNICAL ID.                                    W102TQ053

TELE. W/BURKITT. ASKED THAT HE FAX ME HIS REP.
SEY.DUE HE NEEDED FAXED THE REP. COV/ERAGE ISSUE, HE
AND THE REPORT IS NOT THERE BUT I CHECKED CMS

---

TYPE. REMARK.                                    A
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/02/18
TECHNICAL ID.                                    W102TQ053

TELE. W/BURKITT OF RMG THIS DATE--REQUESTED HIS
REP.BECAUSE WE HAVE TO MAKE A COVERAGE DECISION
ON THIS CASE! WAS PROMISED REP WOULD BE FAXED. MR

---

TYPE. REMARK.                                    D
SUBCLAIM.
SERVICES ID.
CREATE DATE.                                     2004/02/17
TECHNICAL ID.                                    W102TQB46

SUPERVISOR'S INITIAL DIARY

PROG CR2797AL01

*** U N I - C L A I M S *** GROUP
CLAIM: 0000732751 USER: W102T0Q60

UTICA
MR

REDACTED

PAGE...... 10

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/02/06
SERVICES ID....... W102T0J53
TECHNICAL ID...... 
TELE W/BURKITT 2-5-04. REQUESTED STATUS REPORT.

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/01/29
SERVICES ID....... W102T0J53
TECHNICAL ID...... 
90 DAY REP CONFIRMS IA REV ADJUSTED TO 900. AM
INVESTIGATION. MR

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/01/15
SERVICES ID....... W102T0J53
TECHNICAL ID...... 
TO HIM--AND I WILL AS SOON AS I HAVE. RMG'S
REPORT. HE REPP AS SOON AS POSSIBLE. MR
FOR THE

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/01/15
SERVICES ID....... W102T0J53
TECHNICAL ID...... --
RECVD THE MESSAGE BACK FROM DAVE DAWSON RE THIS
ASKED ME TO STATE THAT HE THOUGHT HE
WANTED TO KNOW THE STATUS BECAUSE THE
MATTER TO THE AGENCY IN DECEMBER WOULD HAVE
BEEN OUT. WE WOULD HAVE A COVERAGE DECISION BY NON
HOPED. WE WOULD HAVE A COVERAGE DECISION BY NON
AND I STATED THE NON DECISION TO GET BACK

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/01/14
SERVICES ID....... W102T0J53
TECHNICAL ID...... 
RECVD VOICE MAIL MESSAGE FROM DAVE DAWSON OF THE
BEEN THERE AND PROCURED A NONWAIVER, ETC. WHICH IS
BURKITT COPIES THE REFORM. INVESTIGATION
FORWARD ALL W/A REPP IN THE NEXT 7 TO 10 DAYS.
LEFT A VM MESSAGE FOR DAVE DAWSON RE THIS. MR

TYPE.REMARK....... A
SUBCLAIM.......... 
CREATE DATE....... 2004/01/13
SERVICES ID....... W102T0J53
TECHNICAL ID...... 
SENT 2ND REQUEST QUESTIONNAIRE THIS DATE. MR

TYPE.REMARK....... D
SUBCLAIM.......... 
CREATE DATE....... 2003/12/16
SERVICES ID....... W102T0BA6
TECHNICAL ID...... 
<<<<<  DIARY RECORD ROLLED FROM W102T0J53  >>>>>

UTICA 002127

PROG CR2792AL01

```
                              ** U N I - C L A I M S **
                              UTICA NATIONAL INSURANCE GROUP
                              CLAIM: 0007132751  INSURED USER: W102T0J50          REDACTED          PAGE...... 11


TYPE..........: A
REMARK........:                3:00 12-9-03. THE WITH INSURED DAVE DAWSON.
SUBCLAIM......:                FOLOWING UP, MY TELECON WITH DAVE DAWSON OF THE INSD
CREATE DATE...: 2003/12/09     AGENCY. HE EXPLAINED THAT THEY AGCY'S CORP COUNSEL,
SERVICES ID...: W102T0J53      THE AGCY. HE AGREED THAT THEIR AGCY'S CORP COUNSEL,
TECHNICAL ID..: W102T0J53      SHOULD BE INVOLVED TO PROTECT AGCY'S RIGHTS AS
                               COVERAGE. MR TO BE A CASE OF VERY QUESTIONABLE

TYPE..........: A
REMARK........:                10:20 12-9-03. THE WITH INSURED DAVE DAWSON.
SUBCLAIM......:                HE WAS CONCERNED THAT THEY'VE BEEN UNABLE TO
CREATE DATE...: 2003/12/09     NEEDED TO RESPOND TO A DEMAND. APPARENTLY-03.
SERVICES ID...: W102T0J53      DAVE ASKED IF THEIR CORP ATTY SHOULD BE INVOLVED
TECHNICAL ID..: W102T0J53      MAY THEIR R&B RIGHTS WOULD BE PROTECTED. THAT

TYPE..........: A
REMARK........:                10:15 12-9-03. LEFT MESSAGE FOR BOB BURKITT MR
SUBCLAIM......:                CALL ME TO DISCUSS THIS CASE.
CREATE DATE...: 2003/12/09
SERVICES ID...: W102T0J53
TECHNICAL ID..: W102T0J53

TYPE..........: A
REMARK........:                ...I WOULD F/U WITH BOB BURKITT. MR
SUBCLAIM......:
CREATE DATE...: 2003/12/09
SERVICES ID...: W102T0J53
TECHNICAL ID..: W102T0J53

TYPE..........: A
REMARK........:                10:00 12-9-03. THE WITH DAVE DAWSON OF THE 12-03
SUBCLAIM......:                AGENCY. HE EXPLAINED THAT THEY HE HAS BEEN UNABLE
CREATE DATE...: 2003/12/09     ARBITRATION DEADLINE AND THAT WE AGREED THAT
SERVICES ID...: W102T0J53      ISSUE WHERE THE UTICA PERSON TO COVERAGE
TECHNICAL ID..: W102T0J53      SHOULD ENLIST THE SERVICES OF THEIR OWN COUNSEL
                               TO PROTECT THEM WITH RESPECT TO THE DEADLINE AND
```

UTICA 002128

**EXHIBIT 2**

11/24/03  16:44 FAX 315 734 2856    UMICO E&O CLAIMS                                            ☑001



Utica National Insurance Group          Insurance That Starts With You.

*Ray Cohen*

*Phone:*     *1-800-274-1914 Ext:2628*
*FAX:*       *888-451-3805*
*EMAIL:*     *Ray.Cohen@uticanational.com*

*To:   Kathleen*                        *From: Ray Cohen*

*FAX #:   1 617 770 3129*               *Date: 11/24/2003*

*Pages:   1 of 27*                      *RE: 732751*
                                        *Knapp schenck*

*Kathleen, attached is the new assignment we discussed.  The contact is Dave
Dawson @ 617 619 0268.. If you would ask Bob to give me a call on this
before Wed.*
*Thanks*

*Ray*  → Needs Non-Waiver — breach of contract ???
             & wste

**Confidentiality Notice** The information and any documents accompanying this facsimile message is intended only for the use of the individual or entity to whom it is addressed and may contain information that is confidential and protected from disclosure by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying ,distribution or taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this communication in error, please notify us immediately so that we can arrange for the return of the original document to us at no cost to you.

dec rket → reto date   7/02

UTICA 02081

# EXHIBIT 3

# R.M.G. INVESTIGATIONS

SPRINGFIELD, MASSACHUSETTS
(413) 734-1989
FAX 734-2274

1515 HANCOCK STREET
QUINCY, MASSACHUSETTS 02169
(617) 770-0006
FAX 770-3129
www.rmginv.com

NEW YORK, NEW YORK
(212) 989-2600
FAX 989-3147

CHERRY HILL, NEW JERSEY
(856) 489-1919
FAX 489-0402

January 22, 2004

Utica Mutual Insurance Company
P. O. Box 6549
Utica, NY  13503

Attn:  Mark Ribnikar

Re:    ***ACE USA Companies***
              *vs.*
       *Massamont Insurance Agency, Inc.*
       *Our File:  2-005062*
       *Utica File:  732751*

Dear Mr. Ribnikar:

## INITIAL REPORT

### INSURED

Knapp, Schenck & Company Insurance Agency, Inc., 240 Lewis Wharf, Boston, MA 02110 / **Massamont Insurance Agency, Inc.**, 324 Main Street, Greenfield, MA.   Contact  Dave Dawson, (617) 619-0268.

### COVERAGE

Utica Mutual claims made form policy No. 3445032 effective 7/30/03 – 7/30/04 with limits of liability at $10,000,000 / $11,000,000 and a loss and litigation expense deductible at $50,000 / $150,000.

### DATE OF ERROR

While it is arguable that this matter does not involve an "error" by the insured, for the purpose of reference, at issue is the insured's alleged breach of contract in the movement of a portion of an insurance program book of business as of 7/1/03.

1

UTICA 02098

R.M.G. INVESTIGATIONS

## DATE OF CLAIM

The insured received a demand for contract dispute Arbitration from the claimant's attorney on 10/23/03. However, the insured was placed on notice in 7/03 re the claimant's intent to pursue alleged damages re the subject breach of contract.

## NATURE OF CLAIM

The insured Agency was/is the managing general agent for two insurance programs, "Metrogard" and "Diplomax", offered to public entities and private educational institutions, respectively. As of 2001, the insured Agency entered into an Agreement with ACE USA Companies as the underwriting carrier for the property insurance offered under the Programs. The Agreement was initially for a year but was extended for an additional two years (expiration 12/31/03). As it were, the relationship soured in early 2003 as both the insured Agency and ACE worked towards the mass policies' renewal date of 7/1/03.

That led to the insured Agency moving a goodly portion of the property insurance "book" to another insurance carrier as of 7/1/03. While the insured Agency had been communicating with that carrier as early as 2/03, it did not notify ACE of the book transfer until literally the last minute. ACE took exception and immediately asserted that the insured Agency had violated the terms of their Agreement. The insured Agency disagreed and ACE ultimately made a formal demand for Arbitration, per the Agreement, in 10/03.

While the breach of contract dispute did not directly concern any alleged negligence on the part of the insured Agency, the insured Agency nevertheless placed Utica on notice of the "claim".

## INVESTIGATION

## MASSAMONT INSURANCE AGENCY, INC.

Upon receipt of the assignment, we contacted Dave Dawson of Knapp, Schenck & Associates Insurance Agency, Inc. and were advised that it was necessary to coordinate a meeting with Mr. Dawson and Hilbert "Van" Schenck at the Massamont Insurance Agency, Inc. ("MASSAMONT") in Greenfield, MA. That meeting was initially scheduled for 12/9/03 but was cancelled / postponed by Mr. Dawson until 12/22/03. At that time, we obtained the requested executed Non-Waiver Agreement from Mr. Schenck and had the opportunity to speak with the MASSAMONT personnel involved in the subject insurance programs.

2

UTICA 02099

R.M.G. INVESTIGATIONS

MASSAMONT has been in existence since the 1980s and is licensed in property and casualty insurance lines only. It also conducts 100% commercial lines business and acts as a managing general agent for a few insurance programs. Two such programs are the **Metrogard Program** and the **Diplomax Program**, which provide comprehensive insurance coverages for public entities (including cities and towns, school districts and special districts) and private education institutions (including elementary schools, preparatory schools and small colleges), respectively. The Programs were established in 1988 and, as the founding and managing general agent, MASSAMONT has marketed the Programs in all six New England States. MASSAMONT has also periodically changed underwriting carriers to facilitate the most competitive premium rates / comprehensive insurance.

The Programs' offered / offer various insurance policies including that for property insurance and, as of 1999, all of the property (and casualty) policies were underwritten by the Great American Insurance Company. As of 2000, the Programs' property policies were moved to the Royal Insurance Group. It was then, as of 2001, that the property policies were moved to the ACE USA Companies.

MASSAMONT entered into an "Agency Agreement" with ACE effective 1/1/01 through 12/31/01 with the actual Agreement being drafted and executed in June of 2001 given that the predominate renewal date for the Programs' policyholders was July 1. **Mr. Schenck indicated that MASSAMONT drafted the Agreement** and it set forth MASSAMONT's underwriting authority, general guidelines, and a compensation (profit sharing) arrangement. At the time that MASSAMONT placed the Programs with ACE, they primarily dealt with ACE underwriters **Bill Burkett** and **Michael Carr** in Atlanta, GA.

We were provided with a copy of the Agreement and note that it essentially designated MASSAMONT as the managing general agent for the Programs, and included provisions for "Termination" and for the protection of both parties' respective interests. There was also an amendment to the Agreement that was apparently executed later in 2001 that extended the term of the Agreement to 12/31/03. As it were, certain provisions in the Agreement and its amendment are presently at issue and will be discussed later in this report.

In any event, the Programs' property policies were rolled over into the **Westchester Fire Insurance Company,** an ACE company "admitted" in the involved States, in 2001. Both MASSAMONT and ACE began working on the 2002-2003 renewals in late 2001 and it was initially determined that all policies would have 25% premium increases and be placed with the **Illinois Union Insurance Company,** an ACE company that was "non-admitted" in the involved States. *(While that is now a bone of contention for MASSAMONT, at issue at the time was terrorism coverage in the wake of the 9/11/01 tragedy and that led to ACE's utilization of one of its non-admitted companies.)*

3

UTICA 02100

R.M.G. INVESTIGATIONS

There was a subsequent modification, by April of 2002, re the "paper" used by ACE -- the 2002-2003 policies re Rhode Island policyholders were to be placed with Westchester Fire Insurance Company (admitted) but the policies for the remaining States' policyholders were to be placed with the Illinois Union Insurance Company (non-admitted) with a slight discount in the premium increase scheduled for that year.

The renewal process for 2003-2004 started in November of 2002 but by then Mr. Burkett and Mr. Carr had unceremoniously left ACE and the underwriting of the Programs' policies was moved to ACE's offices in Philadelphia under the supervision of **Bill Sharp** and **Glenn Foster**. The timing of the change also coincided with MASSAMONT's preparation of a "renewal information" presentation, which was essentially a renewal proposal, for the Programs' property insurance for 2002-2003. The renewal information was submitted to ACE first on 11/4/02 and then on 11/7/02 with revisions. The presentation was essentially the Programs' performance overview with proposed policy changes and a proposed premium rate increase of 5%.

ACE / Mr. Sharp did not respond to MASSAMONT's proposal until February of 2003. At that point, Mr. Schenck indicated that ACE proposed a 40% increase in premium rates and that they "needed" at least a 25% increase. The position was initially distressing to MASSAMONT inasmuch as MASSAMONT deemed that a 40% increase would basically end the Programs - - policyholders would not renew given the sharp increase in premium. MASSAMONT was able to convince ACE to only seek a 25% premium increase but then began dealing with ACE's new and drastically different underwriting "philosophy" re the Programs. Almost immediately there was conflict as ACE focused on assessing, and charging, risks for windstorm exposure ("wind load").

In general, the more that MASSAMONT dealt with Mr. Foster, the more it became concerned that the new ACE approach would result in the end of the Programs. As it were, coinciding with the discussions in February regarding the proposed premium increase for 2003 – 2004, Mr. Schenck was approached by **Axis Capital Group**, an entity that had hired a goodly portion of ACE's old underwriting staff in Atlanta (specifically Bill Burkett), about underwriting the Programs. Despite the appearance of the convenient coincidence, **Mr. Schenck unequivocally asserts that he did not solicit interest from Axis** but rather that Axis contacted him given Mr. Burkett's knowledge of the Metrogard and Diplomax Programs. In any event, Mr. Schenck provided Axis with a copy of the 11/02 renewal proposal so that Axis could entertain quoting the business.

*(As you will see, Mr. Schenck's actions in opening a dialog with Axis is essentially the crux of the current "claim" by ACE against MASSAMONT. The actions have been interpreted as a violation of the 2001 Agreement which contained language prohibiting MASSAMONT from soliciting and/or moving Program business to/with another carrier.)*

UTICA 02101

R.M.G. INVESTIGATIONS

In the interim, MASSAMONT id attempt to work with ACE regarding the 2003-2004 policy renewals. However, there was also an audit by ACE (Mr. Foster) in late April which resulted in a report in May that provided an "unsatisfactory" grade for the MASSAMONT administration / management of the Programs. Essentially, ACE asserted that MASSAMONT had been accepting and pricing risks on a class basis, modified to some extent by loss experience, but should have been using "a more traditional underwriting approach" that utilized individual risk characteristics and ACE's windstorm pricing model. *(In other words, ACE's new underwriting staff wanted to evaluate and underwrite the Programs' risks on a case by case basis instead of as a "program".)* ACE also made a number of recommendations for administrative / procedural changes in general and also recommendations with respect to specific account files that had been audited.

MASSAMONT, *still in communication with Axis*, responded by virtue of a 5/15/03 correspondence from newly appointed Chief Operating Officer **Christi Guardiola** to Mr. Foster. Ms. Guardiola's correspondence either commented upon ACE's recommendations or indicated that MASSAMONT would initiate certain changes, and closed by asserting that:

> "Your visit was instructive and I feel our response shows our desire to do whatever is necessary to bring up our pricing and underwriting documentation process up to the satisfactory level you require."

However, the timing of ACE's recommendations for changes was problematic due to the inordinate amount of time that was required, especially given the "wind load" calculations, and the looming mass 7/1/03 renewal date. There had been many communications by and between MASSAMONT and ACE from February to May and Ms. Guardiola's response to the audit report. Internally, MASSAMONT deemed ACE's new underwriting approach as incompatible with a "program" concept in general. MASSAMONT felt that ACE was moving towards culling out all "unacceptable" risks and effectively eliminating the marketing and underwriting advantages of the Programs.

The growing frustration of MASSAMONT is perhaps best epitomized by Ms. Guardiola's 5/16/03 e-mail to Mr. Foster wherein she cites all the efforts being made by MASSAMONT's staff and the issues faced in getting everything prepared for the 7/1/03 renewals. In particular, she noted that the issues pertaining to using admitted and non-admitted paper, and ACE's preoccupation with "wind loads", were constant subjects of discourse. By June 26, the communications between Ms. Guardiola and Mr. Foster were becoming quite acrimonious as they discussed specific risks/clients.

---

* Mr. Schenck would not provide any of his communications with Axis.

UTICA 02102

R.M.G. INVESTIGATIONS

It was then on June 30 that Mr. Schenck called ACE / Mr. Sharp to advise that MASSAMONT had "been able to get someone else to take the Mass. And RI business." Ms. Guardiola summarized (7/1/03 e-mail) the conversation by indicating that Mr. Schenck advised ACE that MASSAMONT was "not prepared to lose entire accounts based on ACE's need to get wind premium this year." Mr. Sharp apparently asked for something in writing from MASSAMONT and Ms. Guardiola made recommendations as to what should be included.

As it were a correspondence apparently did not go out before ACE called to advise that they were terminating their Agreement with MASSAMONT. That was followed by a 7/9/03 letter from ACE to Mr. Schenck. The letter was formal notice to terminate the 2001 Agreement pursuant to Section VIII.C.2, which reads:

> "C.    COMPANY [ACE] may terminate this AGREEMENT immediately by written notice to AGENT [MASSAMONT] if any one or more of the following events occur:

> > 2. AGENT assigns, transfer, encumbers or otherwise disposes of this AGREEMENT or any interest in this AGREEMENT or sells, exchanges, transfers, assigns, merges or consolidates the PROGRAM insurance business without giving COMPANY ninety (90) days prior notice thereof." (emphasis added)

ACE also asserted that MASSAMONT was in breach of Section IX.B (of Exhibit A – Underwriting Authority) which reads:

> "B. During the term of this Agreement AGENT will not solicit for any other insurance carrier, except COMPANY, the Program business. If COMPANY elects to not write such business then AGENT is granted the right to submit such business to other insurance carriers under the same terms and conditions as presented to COMPANY."

And in breach of the "Amendment to the Agency Agreement" wherein the "Term of Agreement" (Section II) was extended to 12/31/03 with the caveat that:

> "The agreement is subject to AGENT agreeing not to seek another company to write the PROGRAM during this period."

Basically, ACE was arguing that MASSAMONT: 1) transferred / assigned the Program business (to Axis) without giving ACE 90 days notice; 2) effectively solicited the Program

6

UTICA 02103

R.M.G. INVESTIGATIONS

business for another carrier (Axis) even though ACE had not elected to "write such business"; and 3) violated its agreement not to "seek another company to write the Program" during the Agreement period (to 12/31/03).

Mr. Schenck was to respond to the ACE letter on 7/11/03 and assert a different interpretation of the cited Agreement provisions. Firstly he argued that the cited violation of Section VIII.C.2 was without merit because MASSAMONT continued to own and operate the subject Programs -- MASSAMONT had not

> "assigned, <u>transferred</u>, encumbered, disposed of, sold, exchanged, transferred, assigned, merged, or consolidated <u>our interest in the program</u> with any other entity." (emphasis added)

Secondly, Mr. Schenck argued that Section IX.B., which he quotes <u>absent the first sentence</u>, was not violated, inasmuch as MASSAMONT had offered ACE the MA and RI "book" (which was moved to Axis) under certain conditions that ACE declined to accept. Therefore MASSAMONT offered the "book" to an "alternate carrier" (Axis).

Lastly, Mr. Schenck asserted that ACE's notice of termination was "without cause" and therefore subject to 120 days notice per Section VIII.A of the Agreement.

As to the gist of Mr. Schenck's arguments, he firstly chose to interpret the prohibition on the transfer of "the PROGRAM insurance business" in Section VIII.C.2 as meaning the transfer of MASSAMONT'S interest in the Program ("our interest in the program"). He then simply omitted the key fist sentence re not soliciting any other insurance carrier in quoting Section IX.B and asserts that ACE, by changing underwriting parameters, had effectively declined to write the Program business. Thus MASSAMONT was justified in offering the business to Axis.

Lastly, Mr. Schenck concluded that ACE had to give 120 days notice re the termination and that MASSAMONT would be willing to work with ACE to replace the "book" that had not been moved to Axis.

As you might expect, ACE did not accept Mr. Schenck's rationale and responded with a 7/16/03 letter which argued that Mr. Schenck's 7/11/03 letter constituted an admission that MASSAMONT had materially breached the Agreement in offering the Program business to an alternate carrier. ACE further argued that it had spent considerable time working on the 7/1/03 renewals and MASSAMONT's movement of the "book" to Axis "came as a complete shock"; and the action caused substantial damage to ACE which <u>they intended to "vigorously pursue."</u>

The next action in the dispute was for ACE to send non-renewal notices to the Programs' policyholders which inferred that the Programs had been terminated rather than ACE's

UTICA 02104

R.M.G. INVESTIGATIONS

involvement in the Programs had been terminated. MASSAMONT responded by sending a clarification notice to the involved brokers (sub-agents). That was on or about 10/23/03, the same day that counsel for ACE faxed a demand to MASSAMONT re dispute Arbitration per the terms of the Agreement. **(It is also noted that MASSAMONT deems that it is owed about $120,000 in compensation from ACE re the Programs' business before their relationship ended.)**

MASSAMONT then placed Utica on notice re the "claim" of ACE.

*(As to the demand for Arbitration, it first sets forth a chronology of MASSAMONT's deficiencies in managing the involved Programs. It does not allege any damages re those deficiencies rather uses them as an explanation as to why ACE moved to make the changes that MASSAMONT was essentially arguing caused them to move the "book" (MA and RI business) to Axis. ACE's argument re damages is based on the alleged breach of contract by MASSAMONT.)*

## LIABILITY / DISCUSSION

The "claim" against the insured Agency is that it breached its Agreement with the "claimant" (ACE) by soliciting an "alternate carrier" (Axis) to underwrite portions (MA and RI policies) of two Programs that the insured Agency managed/administered for ACE and that resulted in damages to ACE: the wasted expense in preparing for the renewal of the involved policies and the loss of income/profit from the Programs' business.

Before commenting on "liability" and coverage, it is also noted that there are side issues which may or may not be affecting the dispute between the insured Agency and ACE. Firstly, Axis' underwriters were past employees of ACE and the circumstances and the terms of their departure from ACE may be at issue. Secondly, the insured Agency is seeking roughly $150,000 in compensation they believe they are entitled to for the Programs 2001-2002 and 2002-2003 years.

As to "liability", the insured Agency does appear to have some issues with respect to the last minute movement of business from ACE to Axis and the undisclosed communications with Axis leading to the move. Those actions did arguably violate the spirit and intent of the Agreement between ACE and the insured Agency. However, ACE also essentially undermined the involved Programs' viability by demanding changes in underwriting.

Notwithstanding the above, it is arguable that the dispute between ACE and the insured Agency is simply not an E & O matter. Firstly, while ACE does detail (in its demand for Arbitration) its assertion that the insured Agency was deficient in its management / administration of the subject Programs, that assertion is only an explanation as to why it sought

8

UTICA 02105

**R.M.G. INVESTIGATIONS**

various changes in the Programs. It is not the basis for its "claim" against the insured Agency. Rather, ACE's claim is for the damages it sustained due to the insured Agency's material breach of the subject Agreement and that breach is detailed as specific deliberate acts by the insured Agency.

It is not alleged that the insured Agency breached the Agreement by virtue of a "Wrongful Act" as defined under the Utica policy as "any negligent act, error, or omission to which this insurance applies." The insured Agency's decision to effectively market the involved Programs to Axis and then move a portion of the Programs' book to Axis was arguably not a "negligent act", an "error", or an "omission".

As it were, the insured Agency has informally argued that the alleged breach of the Agreement is technically an allegation that the insured Agency "erred" (an alleged error in judgment and/or in the interpretation of the Agreement) and thus the "claim" does involve an "error". The semantics of that argument are best left to expert opinion.

However, we would also note Exclusion 18 under the Utica policy which concerns "claims" made against the insured Agency that arise out of:

> "the insured's activities as third party administrator of any plan, whether insured or self-insured and whether or not the insured performs such activities."

While the Utica policy does not define "third party administrator" or "plan", we would argue that the insured Agency's role re the subject Programs was in effect as a "third party administrator" (managing general agent) and that the Programs constituted a "plan". Accordingly, the subject "claim" would be excluded.

Lastly, to the extent that the insured Agency's breach of the subject Agreement is deemed / alleged to have been "dishonest", there would be a coverage issue.

At this time, you may wish to deny coverage re the subject "claim" but we would defer to your office and/or expert opinion / legal counsel. Should you choose to move forward re the denial of coverage, we could assist in preparing a draft for your review. However, we would suggest that the issuance of any coverage position letter be from your office.

Very truly yours,
RMG Investigations

Robert B. Burkitt

RBB:KMS/5062
Enclosures

9

# EXHIBIT 4

# R.M.G. INVESTIGATIONS

SPRINGFIELD, MASSACHUSETTS
(413) 734-1989
FAX 734-2274

1515 HANCOCK STREET
QUINCY, MASSACHUSETTS 02169
(617) 770-0006
FAX 770-3129
www.rmginv.com

NEW YORK, NEW Y
(212) 989-2600
FAX 989-3147

CHERRY HILL, NEW JE
(856) 489-1919
FAX 489-0402

Utica Mutual Insurance Company
P O Box 6549
Utica, NY 13503

Attn   Mark Ribnikar

Ok to Pay MWC

Re      *ACE USA Companies*
                *vs*
        *Massamont Insurance Agency, Inc*
        Our File   2-005062
        Utica File.  732751

Dear Mr  Ribnikar

## SERVICE INVOICE

| | |
|---|---|
| Erect file, clerical and assignment | 1 0 HOURS |
| Receipt, review of assigning fax | 6 |
| Acknowledgement | 2 |
| Telephone calls to / discussion with insured, set appt  (11/25, 12/1, 12/8, 12/15) | 5 |
| Letter to insured with Non-Waiver (12/8) | 7 |
| Travel (12/22) | 4 5 |
| Interview insured employees, review file documentation | 1 9 |
| Prepare/dictate, review and finalize report | 3 5 |

Clerical

UTICA 01848

R.M G. INVESTIGATIONS

Mileage

Tolls

Telephone/Fax, local, long distance, cellular

Photocopies

Postage

12 9  HOURS @

FEE FOR SERVICES

Respectfully submitted,                              Paid            sml
RMG Investigations

Employer ID # 22-2852922

# EXHIBIT 5



PAUL WALTERS
Manager
Errors & Omissions Claims Department

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

P.O. Box 530, Utica, NY 13503-0530
Telephone: (315) 734-2522
FAX: (315) 734-2933
e-mail: paul.walters@uticanational.com

<u>DISCLAIMER OF COVERAGE</u>

March 4, 2004

Knapp Schenck & Company
Massamont Insurance Agency, Inc.
240 Lewis Wharf
Boston, MA 02110

RE:     File No.:        732751
        Insured:         Knapp Schenck & Co; Massamont Ins Agcy. Inc.
        Claimant:        Westchester Fire Insurance Company
        Policy No.:      3445032 EO

This letter is written with respect to the captioned matter and more particularly with respect to the demand for arbitration set forth by Westchester Fire Insurance Company. As you are aware, this matter has been under investigation by R.M.G. Investigations under a nonwaiver agreement. The purpose of the nonwaiver agreement was, and is, to preserve the rights of the parties during the investigation. Our investigation appears concluded and Utica's position regarding coverage is discussed below.

By way of the demand for arbitration various acts and damages are alleged that are not afforded coverage under the Utica policy. First, Westchester Fire Insurance Company alleges that Massamont's actions were in violation of an Agency Agreement entered into in and during 2001. While Utica asserts that coverage under its Insurance Agents and Brokers Errors and Omissions Insurance policy does not apply because of the nature of the claim(s) alleged by Westchester Fire Insurance Company, even if coverage was determined as applicable to the allegations, the policy would not apply because the act(s) generating the claim occurred previous to the Retroactive Date of the Utica policy. In this regard the Utica policy, Form 14-P-EOA (1/98), reads:

> **This insurance does not apply to loss, whenever occurring, from "wrongful acts" which took place before the Retroactive Date, if any, shown 07/30/02.**

In its demand for arbitration Westchester Fire Insurance Company alleges it *"...relied on Massamont's promise to be the exclusive managing general agent on behalf of Westchester for the Program."* In this regard the Utica policy contains exclusions as follows.

**SECTION III – EXCLUSIONS**

This insurance does not apply to:

File No.: 732751
Insured: Massamont Insurance Agency Inc
2

6.      A "claim" by any entity or individual which:

        a.  Is wholly or partially owned, operated, managed, or controlled by the insured;
        b.  Did wholly or partially own, operate, manage, or control the insured; or
        c.  Is wholly or partially under the same ownership, operation, management, or
           financial control as the insured.

### SECTION III – EXCLUSIONS

This insurance does not apply to:

18.     "Claims" made against an insured arising out of the insured's activities as third party
      administrator of any plan, whether insured or self-insured and whether or not the insured
      performs such activities.

In its demand for arbitration Westchester also asserts that there was an issue regarding
*"premiums."* The Utica policy reads as follows.

### SECTION III – EXCLUSIONS

This insurance does not apply to:

4.      Any liability for money received by an insured or credited to an insured for fees,
      premiums, taxes, commissions, loss payments, or escrow or brokerage monies.

Throughout its demand for arbitration Westchester asserts that Massamont was deficient and
otherwise failed to perform various and numerous tasks associated with its obligations and duties
in accordance with the agreement that existed between the two parties to the contract. All of what
is alleged in this regard can be identified and defined as the obligations of a fiduciary. The Utica
policy extends errors and omissions coverage to its policyholders for the following:

### SECTION II – COVERAGE

1.      Insuring Agreement.

      a.  We will pay on behalf of the insured all "loss" to which this insurance applies.

           We will have the right and the duty to defend the insured against any "suit"
           seeking those damages even if the allegations of the "suit" are groundless, false,
           or fraudulent.   However, we will have no duty to defend an insured against any
           "suit" seeking damages for a "wrongful act" to which this insurance does not
           apply.

The Utica policy defines "loss" and covered acts as follows:

### SECTION I – DEFINITIONS

6.      "Loss" means any amount, which an insured becomes legally obligated to pay as
      damages for any "claim" to which this insurance applies and shall include judgments and
      settlements.   To the extent allowed by law, "loss" shall include punitive or exemplary
      damages.  "Loss" shall not include:

      a.  Fines or penalties imposed by law;
      b.  Taxes; and

File No.: 732751
Insured: Massamont Insurance Agency Inc
3

c. Matters, which may be deemed uninsurable under the law pursuant to which the policy shall be construed.

14. "Wrongful act" means any negligent act, error, or omission to which this insurance applies.

In addition to the grant and limitations of coverage as discussed above the Utica policy reads as follows:

## SECTION III – EXCLUSIONS

This insurance does not apply to:

17. Any "claim" based solely on an insured's status as a fiduciary.

Also, based upon the assertions contained throughout Westchester's demand for arbitration it is continually alluded to or asserted that the actions on the part of Massamont were done "secretly." As referenced above under Section II – Coverage, and Section I – Definitions, coverage would not extend to acts other than those defined and referenced and contained in the Insuring Agreement. Section III – Exclusions also reads:

This insurance does not apply to:

1. Any dishonest, fraudulent, malicious, or criminal conduct committed or alleged to have been committed by or at the direction of the insured. If a "suit" is brought against the insured alleging both "wrongful acts" within the coverage of the policy and dishonest, fraudulent, malicious, or criminal conduct, then we will defend the insured in the trial court, but we shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall we have any further obligation to defend after judgment in the trial court.

This exclusion applies only to insureds who participated in, acted with knowledge of, or acquiesced to such conduct.

Summarily, Westchester's claim of Massamont's deliberate and secret breach of the agreement that existed between the parties is not a negligent act, error, or omission to which this insurance applies, as explained in the policy excerpts referenced above.

Since Utica will not be extending coverage in this matter any arbitration award, judgment, or settlement, will be the responsibility of the agency and not that of Utica Mutual Insurance Company.

You may wish to retain counsel, at your cost, to best protect your interests with respect to the claim(s) being made against you and in response to the demand for arbitration made against you.

Any action taken by Utica, its agents, its representatives or attorneys, is not to be construed as, nor does it constitute a waiver of any rights and/or defenses available under the terms, conditions, provisions, definitions, exclusions and endorsements of the referenced professional liability policy, nor shall it prevent Utica from asserting at a later date any rights or defenses that may be available now or in the future regarding this matter. Our position with respect to the absence of coverage regarding this matter is based upon the facts presented to Utica and acquired through its investigation conducted by R.M.G. Investigations under the nonwaiver agreement. If you know of, or become aware of facts that may materially change our position in this matter please contact us immediately.

File No.: 732751
Insured:  Massamont Insurance Agency Inc.
4

If you have any questions whatsoever regarding this advisement, please contact Senior Errors and Omissions Claims Specialist Mark. M. Ribnikar at 1-800-274-1914 on extension 2628.

Sincerely,

Paul E. Walters, Manager
Errors and Omissions Claims

Cc:     Mark M. Ribnikar, AIC
        Senior E & O Claims Specialist
        File No: 732751

# EXHIBIT 6



# Utica National Insurance Group

*Insurance That Starts With You*

## F A C S I M I L E   T R A N S M I S S I O N

☐ *RUSH*

**Date**   03-04-04

**Page**   1 of   5

| | |
|---|---|
| **Attention of:** | Robert B. Burkitt |
| **Company:** | RMG Investigations |
| **FAX #:** | 617-770-3129 |
| **From:** | Mark M. Ribnikar |
| **Office or Dept.:** | E&O Claims |
| **Office Phone:** | (315) 734-2628 |
| **Return Fax:** | (315) 734-2933 |

**Subject:**   Your File # 2-005062

Cc coverage disclaimer for your file.

**Confidentiality Notice** The information and any documents accompanying this facsimile message is intended only for the use of the individual or entity to whom it is addressed and may contain information that is confidential and protected from disclosure by law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this communication in error, please notify us immediately so that we can arrange for the return of the original document to us at no cost to you.

UTICA 01859

# EXHIBIT 7

# R.M.G. INVESTIGATIONS

SPRINGFIELD, MASSACHUSETTS
(413) 734-1989
FAX 734-2274

1515 HANCOCK STREET
QUINCY, MASSACHUSETTS 02169
(617) 770-0006
FAX 770-3129
www.rmginv.com

NEW YORK, NEW YORK
(212) 989-2600
FAX 989-3147

CHERRY HILL, NEW JERSEY
(856) 489-1919
FAX 489-0402

March 8, 2004

Utica Mutual Insurance Company
P. O. Box 6549
Utica, NY  13503

Attn:  Mark Ribnikar

Re:    *ACE USA Companies*
              *vs.*
       *Massamont Insurance Agency, Inc.*
       *Our File:  2-005062*
       *Utica File:  732751*

Dear Mr. Ribnikar:

## STATUS REPORT

Per your request, enclosed are copies of the enclosures to our 1/22/04 report.

Very truly yours,
RMG Investigations

Robert B. Burkitt

RBB:KMS

Enclosures

UTICA 01858

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.05-11897-WGY

|  |  |
|---|---|
| MASSAMONT INSURANCE AGENCY, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| UTICA MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S ANSWERS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES**

The plaintiff, Massamont Insurance Agency, Inc. ("Massamont"), hereby responds to the defendant's First Set of Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure as follows:

**Interrogatory No. 1:**

Please state your full name, age, residential address, business address, and occupation.

**Answer No. 1:**

Peter G. Archangeli, P.O. Box 1170, Greenfield, MA  01302; Vice-President; Massamont Insurance Agency, Inc.

**Interrogatory No. 2:**

Please state the basis of your contention, made in Paragraph 48 of the Complaint, that Utica's denial of coverage to Massamont was based on an incomplete and/or inadequate investigation.

**Answer No. 2:**

**Objection:** The plaintiff objects to Interrogatory No. 2 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of

privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery with respect to the scope of defendant's investigation is not yet complete.

Without waiving these or any other objections, the plaintiff states:

    1. Utica Mutual Insurance Company's ("Utica") investigation of the third-party claim brought against Massamont by Westchester Fire Insurance Company ("Westchester") was not conducted promptly.

    2. Utica assigned the investigation to Robert B. Burkitt of R.M.G. Investigations in Quincy. Issues remain as to whether Mr. Burkitt was given adequate background, instructions or materials by Utica before conducting the investigation and/or whether Mr. Burkitt had the requisite qualifications and experience to conduct such an investigation on Utica's behalf. Issues also remain as to the scope of Mr. Burkitt's assignment. Was he assigned to investigate Westchester's third-party claim against Massamont only, or was he also assigned to investigate Massamont's claim for coverage under the Insurance Agents and Brokers Errors and Omissions Liability Policy (the "E&O Policy")?

    3. Mr. Burkitt's investigation of the third-party claim was not conducted promptly.

    4. Mr. Burkitt met with Massamont representatives only once on December 22, 2003. The meeting lasted less than two hours. During that meeting, Mr. Burkitt interviewed Massamont employees and reviewed documentation. Mr. Burkitt requested no follow-up meetings with or documentation from Massamont.

    5. Issues remain as to whether Mr. Burkitt interviewed all Massamont employees with knowledge of Westchester's third-party claim and/or whether he adequately or appropriately questioned those employees whom he did interview. Issues remain as to whether Mr. Burkitt requested or reviewed adequate documentation from Massamont. Issues remain as to whether Mr. Burkitt adequately focused his investigation on the details of Westchester's third-party claim against Massamont and Massamont's potential defenses thereto, rather than on the details of Massamont's claim for coverage under the E&O Policy.

    6. It appears, from Utica's file notes, that it took Mr. Burkitt two months to submit his "Initial Report" to Utica. This was not prompt. It also appears, from R.M.G.'s invoice, that Mr. Burkitt conducted no further investigation of Westchester's third-party claim after his meeting with Massamont representatives on December 22, 2003, and prior to the preparation of his "Initial Report.".

    7. Mr. Burkitt made unfair judgments concerning Massamont's defense position vis-a-vis Westchester and drew improper conclusions concerning the actual basis of

Westchester's third-party claim.

8.  Issues remain as to whether Mr. Burkitt and/or Utica made any attempts to communicate with Westchester or its attorneys about the nature of the third-party claim against Massamont.  Issues remain as to whether Mr. Burkitt and/or Utica made any attempts to communicate with Axis Specialty Insurance Company ("Axis") to corroborate the information provided by Massamont and/or to obtain additional documentation.

9.  Mr. Burkitt did not provide copies of the documentation he received from Massamont to Utica together with his "Initial Report."  Utica did not receive or review the documentation from Massamont (obtained through Mr. Burkitt's investigation) prior to disclaiming coverage to Massamont.  Issues remain as to whether Utica's denial of coverage to Massamont was based solely or exclusively on the results of Mr. Burkitt's investigation as set forth in his "Initial Report."

10.  As a result of his investigation, Mr. Burkitt proffered that Westchester's third-party claim "arguably" did not qualify as a "negligent act, error or omission" within the meaning of the E&O Policy.  It appears that, within three business days after receiving Mr. Burkitt's "Initial Report," Utica concluded that a "disclaimer [was] in order."  Issues remain as to the nature of any further investigation conducted by Utica prior to making its coverage determination.

11.  Massamont is unaware of any efforts made by Utica to monitor the underlying arbitration as it proceeded.  Massamont is likewise unaware of any efforts made by Utica to renew or reopen its investigation following its receipt of Massamont's multiple requests to reconsider its coverage position.  Not only did Utica refuse to alter its coverage position, it refused to entertain the notion that its initial investigation might have been incomplete or, in some way, inadequate.

The above list is not meant to be exhaustive.  Instead, it is intended to identify some examples upon which the plaintiff relied to support is allegation that the defendant's investigation was incomplete and/or inadequate.  The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 3:**

Please state the basis of your contention, made in Paragraph 58 of the Complaint, that Utica engaged in unfair or deceptive acts or practices in connection with its decision to decline to defend Massamont in the Arbitration.

**Answer No. 3:**

**Objection:** The plaintiff objects to Interrogatory No. 3 on the grounds that it (1) exceeds the

scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, the plaintiff states:

1. As set forth in Answer to Interrogatory No. 2 above, Utica declined to defend Massamont on the basis of an incomplete and/or inadequate investigation.

2. Utica failed to provide promptly a reasonable explanation of the basis in the E&O Policy, in relation to the facts or applicable law, for its denial of coverage.

3. By asserting various inapplicable grounds for its denial, by subsequently disavowing or otherwise withdrawing those grounds, and by belatedly raising "new" grounds for its denial, all without obtaining new information or facts, or without re-opening its investigation, Utica failed to provide promptly a reasonable explanation of the basis in the E&O Policy, in relation to the facts or applicable law, for its denial of coverage.

4. Utica relied on Exclusion 1 of the E&O Policy (for "dishonest, fraudulent, malicious or criminal conduct") to disclaim coverage for its duty to defend Massamont, despite the fact that Utica expressly agreed in Exclusion 1 that it "will defend" Massamont against such claims.

5. Utica relied on Exclusion 1 of the E&O Policy (for "dishonest, fraudulent, malicious or criminal conduct") to disclaim coverage for its duty to defend Massamont, despite the fact that Westchester did not assert a claim of dishonesty, fraud, malicious or criminal conduct against Massamont.

6. By letter dated March 31, 2005, the first occasion on which Utica advised Massamont that one of the grounds for its denial of coverage was that Westchester's claim did not arise out of a "negligent act, error or omission" within the meaning of the E&O Policy, Utica supported its policy interpretation by relying on case law from Indiana, the 7th Circuit and the 11th Circuit. Utica failed to mention, however, the controlling Massachusetts case, USM Corp. v. First State Ins. Co., 420 Mass. 865 (1995), which directly contradicted Utica's position.

7. Utica relied on the fact that Westchester's claim did not arise from and was not inherent in the rendering of "professional advice," to disclaim coverage for its duty to defend Massamont. This ground misrepresents the E&O Policy provisions relating to the coverage at issue.

The above list is not meant to be exhaustive. Instead, it is intended to identify some examples

The above list is not meant to be exhaustive. Instead, it is intended to identify some examples upon which the plaintiff relied to support is allegation that Utica engaged in unfair or deceptive acts or practices in declining to defend Massamont against the arbitration. The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 4:**

Please state the basis of your contention, made in Paragraph 59 of the Complaint, that Utica engaged in unfair claims settlement practices in connection with its decision to decline to defend Massamont in the Arbitration.

**Answer No. 4:**

**Objection:** The plaintiff objects to Interrogatory No. 4 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, see Answer to Interrogatory No. 3 above. The plaintiff reserves the right to supplement this response upon the completion of all discovery.

**Interrogatory No. 5:**

Please state how you were damaged by any act or practice identified in your responses to Interrogatory Nos. 3 and 4.

**Answer No. 5:**

The plaintiff was (1) compelled to defend itself against the arbitration at its own cost and expense; (2) compelled to retain counsel to protect its rights under the E&O Policy vis-a-vis Utica; (3) compelled to pay a $2,600,000 legal liability covered under the terms and provisions of the E&O Policy, plus interest; and (4) forced compelled to retain counsel to bring this action in the United States District Court. The plaintiff has incurred costs, expenses and attorneys' fees associated with the above. The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 6:**

Please state the basis of your contention, made in Paragraph 61 of the Complaint, that Utica acted willfully or knowingly, or in bad faith, in declining to defend Massamont in the Arbitration.

**Answer No. 6:**

**Objection:** The plaintiff objects to Interrogatory No. 6 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, the plaintiff states:

    1.  By conducting an incomplete and/or inadequate investigation, by issuing multiple disclaimers based on inapplicable grounds, and by making misrepresentations of applicable law and policy language, Utica manifested a clear intent to deny coverage to Massamont in the circumstances of Westchester's third-party claim, despite the language of the E&O Policy and controlling Massachusetts law.

    2.  In further response, see Answer to Interrogatory No. 3 above.

The plaintiff reserves the right to supplement this response upon the completion of all discovery.

**Interrogatory No. 7:**

Please state the basis of your contention, made in Paragraph 77 of the Complaint, that Utica's denial of coverage to Massamont was based on an incomplete and/or inadequate investigation.

**Answer No. 7:**

**Objection:** The plaintiff objects to Interrogatory No. 7 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery with respect to the scope of defendant's investigation is not yet complete.

Without waiving these or any other objections, see Answer to Interrogatory No. 2 above.  The plaintiff reserves the right to supplement this response upon the completion of all discovery.

**Interrogatory No. 8:**

Please state the basis of your contention, made in Paragraph 81 of the Complaint, that Utica engaged in unfair or deceptive acts or practices in connection with its decision to decline to indemnify Massamont in the Arbitration.

**Answer No. 8:**

**Objection:** The plaintiff objects to Interrogatory No. 8 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, see Answers to Interrogatories No. 2 & 3 above. The plaintiff reserves the right to supplement this response upon the completion of all discovery.

**Interrogatory No. 9:**

Please state the basis of your contention, made in Paragraph 82 of the Complaint, that Utica engaged in unfair claims settlement practices in connection with its decision to decline to indemnify Massamont in the Arbitration.

**Answer No. 9:**

**Objection:** The plaintiff objects to Interrogatory No. 9 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, the plaintiff states:

    1.  As demonstrated by its incomplete and/or inadequate investigation, its issuance of multiple disclaimers based on inapplicable grounds, and its misrepresentations of applicable law and policy language, Utica has manifested a clear intent to decline to indemnify Massamont against the Westchester third-party claim, despite the language of the E&O Policy and controlling Massachusetts law.

    2.  In further response, see Answers to Interrogatories No. 2 & 3 above.

The plaintiff reserves the right to supplement this response upon the completion of all discovery.

**Interrogatory No. 10:**

Please state how you were damaged by any act or practice identified in your responses to Interrogatory Nos. 8 and 9.

**Answer No. 10:**

See Answer to Interrogatory No. 5 above. The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 11:**

Please state the basis of your contention, made in Paragraph 84 of Complaint, that Utica acted willfully or knowingly, or in bad faith in declining to indemnify Massamont in the Arbitration.

**Answer No. 11:**

**Objection:** The plaintiff objects to Interrogatory No. 11 on the grounds that it (1) exceeds the scope of discovery permissible under Fed. R. Civ. P. 26(b)(2); (2) seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives; and (3) discovery is not yet complete.

Without waiving these or any other objections, see Answers to Interrogatories No. 2, 3, 6 & 9 above. The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 12:**

Please identify each individual with whom Massamont had communications regarding the issue of whether Utica's policy obligated Utica to defend or indemnify Massamont in the Arbitration, and for each such individual, please state the date on which Massamont first had such communications.

**Answer No. 12:**

**Objection:** The plaintiff objects to Interrogatory No. 12 on the grounds that it seeks the production of privileged attorney-client communications, attorney work product, and/or materials or information prepared or obtained in anticipation of litigation or for trial by or for the plaintiff or by or for the plaintiff's representatives.

**Interrogatory No. 13:**

Please identify each individual who has knowledge regarding any facts relevant to Massamont's claims in this matter.

**Answer No. 13:**

**Objection:** The plaintiff objects to Interrogatory No. 13 on the grounds that it is (1) overly broad; (2) unduly burdensome; and (3) seeks to oppress and annoy the plaintiff.

Without waiving these or any other objections, the plaintiff identifies the following individuals:

1.  Hilbert Schenck II, President, Massamont;
2.  Peter G. Archangeli, Esq., Vice-President, Massamont;
3.  David M. Dawson, CPCU, Sr. Vice President, Massamont;
4.  Robert B. Burkitt, R.M.G. Investigations;
5.  Paul Walters, Manager of Errors and Omissions Claims, Utica;
6.  Mark M. Ribnikar, Senior Errors and Omissions Claims Specialist, Utica;
7.  Marc Chilton, Utica;
8.  Members of Massamont underwriting and marketing staff;
9.  Representatives of Westchester; and
10. Representatives of Axis.

The plaintiff reserves the right to supplement this Answer upon the completion of all discovery.

**Interrogatory No. 14:**

Please identify each expert witness whom you intend to call to testify at any trial of this matter, and for each such witness, please state or identify:

a.  The qualifications of the witness;
b.  The subject matter(s) about which you expect the expert to testify;
c.  The substance of the witness' expected testimony; and
d.  The materials reviewed or relied upon by the witness in formulating his or her opinions.

**Answer No. 14:**

Massamont has not yet determined whom it will call as expert witnesses at the trial of this action. If appropriate, Massamont will supplement this Answer pursuant to the Federal Rules of Civil Procedure.