UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                  |   |                        |
|----------------------------------|---|------------------------|
| MASSAMONT INSURANCE AGENCY, INC. | ) |                        |
| Plaintiff,                       | ) |                        |
|                                  | ) |                        |
| v.                               | ) | CIVIL ACTION           |
|                                  | ) | NO. 05-11897-WGY       |
| UTICA MUTUAL LIFE INSURANCE COMPANY, | ) |                    |
| Defendant.                       | ) |                        |

ORDER

YOUNG, D.J.                                            September 15, 2006


     The Court has reviewed the record, the parties' briefs, counsels' presentations at oral argument, and the applicable law in this matter.  After careful consideration, the Court hereby allows Utica Mutual Life Insurance Company's Motion for Summary Judgment [Doc. No. 20] and denies Massamont Insurance Agency, Inc.'s Motion for Summary Judgment [Doc. No. 16].

>     The interpretation of an insurance policy in undisputed factual circumstances is a matter of law to be decided by the court.  Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995).  The unambiguous language in an insurance contract is to be construed according to its plain meaning.  Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 76-77 (1994). Should that language be ambiguous it is to be construed against the insurance company and in favor of the insured.  Preferred Mut. Ins. Co. v. Gamache, 42 Mass. App. Ct. 194, 198 (1997) (citing

>    Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81,
>    83 (1984)).
>         In order to determine whether a specific policy
>    provision requires an insurance company to defend its
>    insured against a third party suit, it is necessary to
>    match the third party complaint with the policy
>    provisions. Continental Cas. Co. v. Gilbane Bldg. Co.,
>    391 Mass. 143, 146 (1984) (citing Sterilite Corp. v.
>    Continental Casualty Co., 17 Mass. App. Ct. 316, 318
>    (1983)). If the allegations of the complaint are
>    "reasonably susceptible of an interpretation that they
>    state or adumbrate a claim covered by the policy terms,
>    the insurer must undertake the defense." Sterilite, 17
>    Mass. App. Ct. at 318.

Wyman-Gordon Co. v. Liberty Mutual Fire Ins. Co., No. Civ.A. 96-2208A, 2000 WL 34024139, at *3 (Mass. Super. Ct. July 14, 2000).

The insurance contract at issue, Compl. [Doc. No. 1], Ex. A, provides for Utica to insure Massamont against "all 'loss'[1] to which this insurance applies." It provides further that "[t]he 'loss' must arise out of 'wrongful acts' committed in the conduct of [Massamont's] business[,] . . . by [Massamont,] . . . in rendering or failing to render professional services as: (1) A General Insurance Agent; (2) An Insurance Broker; [or] (3) An Insurance Agent . . . ." "Wrongful act" is defined as 'any negligent act, error, or omission to which this insurance applies." Finally, the contract provides that Utica would "have the duty to defend [Massamont] against any 'suit'[2] seeking those

---

[1]The parties do not dispute that the $2.6 million arbitration award against Massamont constitutes a "loss" under the contract.

[2]The parties do not dispute that the arbitration constitutes a "suit" under the contract.

damages [i.e., 'loss'] . . . .  However, [Utica] will have no duty to defend [Massamont] against any 'suit' seeking damages for a 'wrongful act' to which this insurance does not apply."

Necessary to the application of this coverage is that Massamont's "loss" have "<u>arise[n] out of</u> 'wrongful acts' . . . in rendering or failing to render <u>professional services</u> as [an insurance agent]."  (Emphasis added).  The letter from Westchester Fire Insurance Company ("Westchester")to Massamont that demanded arbitration was a complaint that Massamont had breached the exclusive agency agreement by transferring business to another firm.  <u>See</u> Aff. of Hilbert Schenck II [Doc. No. 19-3], Ex. H.  Though passing reference is made of Massamont's alleged deficiency in servicing the contract, such reference is only in a historical context.  Tellingly, the letter concludes, "In this arbitration, Westchester seeks to recover all damages to Westchester caused by Massamont's breach of the exclusivity in the Agreement."  <u>Id.</u>  It is only reasonable to conclude that the arbitration award compensated for this claimed breach.[3]

---

[3] In Massachusetts, an insurance company's duty to defend an insured is quite broad.  Because of this, Massamont argues that "Utica ha[d] no right to draw such a unilateral conclusion" that the demand by Westchester was not within the policy's coverage.  Deciding the scope of the duty to defend entails "'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy."  <u>Boston Symphony Orchestra, Inc.</u> v. <u>Commercial Union Ins. Co.</u>, 406 Mass. 7, 12-13 (1989) (quoting <u>Sterilite Corp.</u>, 17 Mass. App. Ct. at 318).

The question then becomes whether Massamont's alleged breach arose out of the rendering of professional services. The Supreme Judicial Court construed the meaning of "professional services" in the medical malpractice insurance context in Rose v. Federal Ins. Co., 412 Mass. 43 (1992). It quoted the Supreme Court of Nebraska at length:

> "[A medical malpractice] insurer's liability is . . . limited to the performing or rendering of 'professional' acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominately mental or intellectual, rather then physical or manual. . . . In determining whether a particular act is of a professional nature or a 'professional service' <u>we must look not to the title or character of the party performing the act, but to the act itself</u>."

Id. at 48 (alterations in original, emphasis added) (quoting Marx v. Hartford Accident & Indem Co., 157 N.W.2d 870 (Neb. 1968)).

---

The duty to defend is not limitless. "When allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claim." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 395-95). Here, Massamont's alleged act, by any reasonable reading of the insurance contract, was expressly outside the policy language. Thus, its language was not "reasonably susceptible" to an interpretation requiring coverage.

The <u>act</u> alleged by Westchester was the transfer of accounts to another company in breach of the exclusivity clause of the agency agreement. This is not a "professional" act. The decision to perform or not perform did not involve any specialized knowledge or skill, but rather was simply a business decision.

In the primary case cited by Massamont (though, for an argument the Court does not reach), <u>USM Corp.</u> v. <u>First State Ins. Co.</u>, 420 Mass. 865 (1995), which interpreted "wrongful act" language similar to that in the instant policy, the Supreme Judicial Court made a critical statement qualifying its holding. Ruling that an insured's non-negligent (but unintentional) breach of an express warranty was covered by a policy encompassing only "any negligent act, error or omission", the court noted that "[a]lthough the policy [at issue there] d[id] not cover liability because of each and every error resulting from a breach of contract, <u>the error in this case was inherent in the rendering of professional services</u>." <u>Id.</u> at 868 (emphasis added); <u>see also id.</u> at 867 ("It seems clear that [the insured's] losses were incurred in the conduct of its business as consultants and in the rendering of related professional services.").[4] Here, the breach

---

[4] Another case cited by Massamont, <u>The Home Ins. Co.</u> v. <u>St. Paul Fire & Marine Ins. Co.</u>, 229 F.3d 56 (1st Cir. 2000), is also in this vein. In that case, a lawyer disclosed clients' confidential information after having represented them. He sought to have his insurance company defend him under his

of Massamont's exclusive agency agreement did not occur in an attempt to fulfill it -- the possibility of a breach such as this is not "inherent in the rendering of professional services".

This is not to say that breaches of contract can never be covered by clauses such as the one here.  USM makes clear the contrary.  Cases involving true malpractice or breaches of warranty easily fit into USM's rubric.  Unlike in USM, however, the claimant here (Westchester) did not seek to recover from Massamont for substandard performance of a contract, but instead complained of a breach of the exclusivity clause in the agency contract.  The decision to stop performance of a professional contract is not a professional act.  Cf. Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass. App. Ct. 239, 245 (1993) ("[W]e do not suppose that a vendor of a food product, when purchasing comprehensive liability insurance, expects that it will cover legal costs attendant on commercial disputes with, for example, its distributors which arise out of their contractual arrangements rather than from the actual purveying of the product.  That would transform the policy to comprehensive litigation insurance." (citations omitted)).  If Massamont's

---

"negligent act, error, or omission" insurance policy.  The court agreed, saying that the lawyer had "continuing ethical duties" even after the representation had ended.  Thus, this case is akin more to faulty performance of a professional service.  These duties were themselves a "legal service" and, as such, were "inherent in the rendering of professional services."  USM Corp., 420 Mass. at 868.

interpretation of the contract were adopted, this policy would be converted into "comprehensive litigation insurance", as opposed to the malpractice-type insurance it obviously was intended to be.  Any conceivable business act performed by Massamont, under that interpretation, would be deemed a "professional service".  Under a contract with limitations such as this one, such a result cannot have been intended.  See Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass. App. Ct. 239, 245 (1993) ("Common sense is not a stranger to the interpretation of insurance policies.").

Because Massamont's breach did not arise in the performance or nonperformance of a "professional service", the Court need not address whether Massamont's breach constituted a "wrongful act" under the policy.  Accordingly, Utica's Motion for Summary Judgment [Doc. No. 20] is hereby ALLOWED; Massamont's Motion for Summary Judgment [Doc. No. 16] is hereby DENIED.  Judgment for Utica shall enter.

SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE